**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 20 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

RICKY JOE NELSON,

      Defendant-Appellant.

No. 02-6183

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**D.C. No. CR-01-142-R**

Randal A. Sengel, Assistant United States Attorney, (Robert G. McCampbell, United States Attorney, with him on the briefs) Oklahoma City, OK, Attorneys for Plaintiff-Appellee.

Thomas D. McCormick, Oklahoma City, OK, Attorney for Defendant-Appellant.

Before **KELLY, HOLLOWAY** and **McCONNELL**, Circuit Judges.

**HOLLOWAY**, Circuit Judge.

      This is an appeal from a criminal conviction for conspiracy to distribute controlled prescription drugs outside the usual course of professional practice (sale of prescription drugs over the internet) and conspiracy to engage in a monetary transaction with criminally derived

property (money laundering). Defendant/appellant Ricky Joe Nelson (Nelson) is a physician who, with co-conspirators Fuchs and Shadid, operated an internet pharmacy that sold hydrocodone (a barbiturate and a Schedule III controlled substance) over the internet. Nelson appeals his conviction, arguing that there was insufficient evidence to support conviction on either count as there was no evidence of a conspiracy. Nelson also argues that the trial judge committed reversible error in improperly instructing the jury as to the illegal distribution charge.

For the reasons detailed below, we conclude that the government has presented sufficient evidence to support Nelson's conspiracy conviction. We also conclude that there was no error in the jury instructions given at trial. Accordingly, we AFFIRM Nelson's conviction.

# I

## *Background*

Clayton Fuchs (Fuchs), an unindicted co-conspirator, operated an internet pharmacy called "NationPharmacy.com." where customers could obtain prescription and non-prescription drugs. In accord with federal law, all requests for prescription drugs were first reviewed by a physician, defendant Nelson, who either approved or denied the request. Nelson, however, approved 90-95% of all prescription drug requests and did so without ever examining his purported patient. Moreover, the vast majority of filled prescriptions were for hydrocodone, a powerful and addictive pain-killer and a Schedule

III controlled substance.

Customers who used Fuchs's internet pharmacy would have their orders routed through a brick and mortar pharmacy called Main Street Pharmacy. Nelson would physically visit Main Street Pharmacy to sign the prescription requests, and the customer would receive his or her prescription by mail and pay Fuchs directly. Nelson, the prescribing physician, was never paid by any customer. Instead, Nelson received a total of $175,000, which was wired directly from Fuchs into an offshore account.

Nelson was charged and convicted of both conspiracy to distribute controlled prescription drugs outside the usual course of professional practice, in violation of 21 U.S.C. § 846, and conspiracy to launder money, in violation of 18 U.S.C. § 1956(h). Nelson now appeals, arguing that there was insufficient evidence at trial to show a conspiracy existed. Nelson also argues that the district court erred in instructing the jury that it could convict for violation of 21 U.S.C. § 846 (conspiracy to illegally distribute controlled prescription drugs) if it found the prescriptions were either without a legitimate purpose *or* outside the course of professional practice when it instead should have instructed the jury that conviction was appropriate only if it found that the prescriptions were both for no legitimate purpose *and* outside the course of professional practice.

## II

*Discussion*

### A

*Sufficiency of the evidence*

> We review the record for sufficiency of the evidence de novo. Evidence is sufficient to support a conviction if a reasonable jury could find the defendant guilty beyond a reasonable doubt, given the direct and circumstantial evidence, along with reasonable inferences therefrom, taken in a light most favorable to the government. Rather than examining the evidence in "bits and pieces," we evaluate the sufficiency of the evidence by "considering the collective inferences to be drawn from the evidence as a whole."

*United States v. Wilson*, 107 F.3d 774, 778 (10th Cir. 1997) (citations omitted) (quotation marks in original). "A conspiracy conviction requires the Government to prove, [1] that two or more persons agreed to violate the law, [2] that the defendant knew at least the essential objectives of the conspiracy, [3] that the defendant knowingly and voluntarily became a part of it, and [4] that the alleged coconspirators were interdependent." *United States v. Torres*, 53 F.3d 1129, 1134 (10th Cir. 1995).

Nelson argues the government failed to present sufficient evidence establishing an agreement between Nelson and any other person to either distribute controlled prescription drugs outside the usual course of professional practice or to launder money. In support, Nelson relies upon the fact that there was no witness who testified at trial as to the existence of any agreement. We are not persuaded.

"[A]n agreement constituting a conspiracy may be inferred from the acts of the parties and other circumstantial evidence indicating concert of action for the accomplishment of a common purpose." *United States v. Johnson*, 42 F.3d 1312, 1319 (10th Cir. 1994). Thus, "the absence of any direct evidence of a conspiracy is immaterial so long as there is sufficient circumstantial evidence of a conspiracy to support a finding of guilt beyond a reasonable doubt." *Torres*, 53 F.3d at 1135.

At trial, the government presented more than sufficient circumstantial evidence of an agreement between Nelson and Fuchs to render the lack of direct evidence immaterial. This evidence consisted of the testimony of fifteen different witnesses and established the existence of an operation, which Nelson willingly participated in, to distribute controlled prescription drugs over the internet and to hide the proceeds of those sales. The most significant evidence was the testimony of Alexander Weeks (Weeks), the person who set up the website, Jerry Shadid (Shadid), the resident pharmacist at Main Street Pharmacy, Myron Thompson (Thompson), another pharmacist at Main Street Pharmacy, and Misty Dupes (Dupes), the office manager for Fuchs.

Weeks's testimony described the general workings of the Fuchs website called "NationPharmacy.com." He testified he established this website at Fuchs's behest as a means of providing prescription and non-prescription drugs over the internet. I Trial Transcript at 20-21. Weeks also testified that only those orders for prescription drugs that were specifically approved by Nelson were processed. *Id.* at 33. And he testified that he

provided Nelson the means to review and approve prescription drug requests by means of a unique user name and password that enabled Nelson to access the medical history questionnaires required to be filled out by all customers who requested prescription drugs. *Id.* at 30.

Shadid and Thompson testified at trial as to Nelson's personal participation in this scheme. Both men were pharmacists at Main Street Pharmacy, which processed all orders taken through the "NationPharmacy.com." *Id.* at 55, 100. And both testified that on numerous occasions, Nelson would personally come to Main Street Pharmacy to sign prescriptions authorizing the dispensing of hydrocodone. *Id.* at 62-63, 105. Both also testified that Nelson signed "thousands" of prescriptions for "NationPharmacy.com." *Id.* at 66, 105. Finally, Dupes testified that she transferred money, a total of $175,000, from an account controlled by Fuchs to an offshore account controlled by Nelson. II Trial Transcript at 345.

This evidence describes a scheme that depended upon the participation of Nelson. Without his approval, requests for controlled prescription drugs taken on the website would not even be processed. Without his signature, those requests that were processed would not have been filled. And, in return for his efforts, Nelson was paid a total of $175,000 that was wired to an offshore account. Given the "concert of action" between Nelson and Fuchs in the "common purpose" of operating NationPharmacy.com, a reasonable jury could infer the existence of "an agreement constituting a conspiracy."

*Johnson*, 42 F.3d at 1319. Therefore, the government did present sufficient circumstantial evidence of conspiracy to render the lack of direct evidence immaterial.

Accordingly, we hold that a rational jury could find beyond a reasonable doubt that Nelson participated in a conspiracy to distribute controlled prescription drugs outside the usual course of professional practice and to launder the proceeds of that distribution.

**B**

*The jury instruction*

We review the district court's refusal to give a particular jury instruction for abuse of discretion. In assessing whether the court properly exercised that discretion, a reviewing court must examine the instructions as a whole to determine if they sufficiently cover the issues in the case and focus on the facts presented by the evidence. The question of whether the jury was properly instructed is a question of law, and thus, our review is de novo.

We consider all the jury heard and, from [the] standpoint of the jury, decide not whether the charge was faultless in every particular but whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine these issues. We will reverse a conviction due to an erroneous instruction only if the error was prejudicial when viewed in light of the entire record.

*United States v. Voss*, 82 F.3d 1521, 1529 (10th Cir. 1996) (quotation marks and citations omitted) (alterations in original).

At trial, the district court instructed the jury that it could convict Nelson for conspiracy to distribute controlled prescription drugs outside the usual course of professional practice

if it found Nelson had agreed with another to distribute controlled prescription drugs outside the usual course of medical practice *or* without legitimate medical purpose. For example, the trial judge gave an instruction on the elements of Count 1 which, in pertinent part, said:

**COUNT 1: CONSPIRACY TO DISTRIBUTE**
**CONTROLLED SUBSTANCES – ESSENTIAL ELEMENTS**

In order for the Defendant . . . to be found guilty of the crime charged in Count 1 of the Indictment, i.e., conspiracy to distribute prescription drugs that are controlled substances *outside the usual course of medical practice or without a legitimate medical purpose*, the government must prove the following four elements beyond a reasonable doubt:

. . . . .

In order for the Defendant to be found guilty on Count 1, the Government must prove that the Defendant knowingly and deliberately arrived at some type of agreement and understanding with another that they would distribute prescription drugs *outside the usual course of medical practice or without legitimate medical purpose* . . . .

Document 34 (emphasis added).[1] On appeal, Nelson argues this was in error as the conjunctive, rather than the disjunctive, should have been used, *i.e.*, the jury instructions should have required the government to prove an agreement with another to distribute prescription drugs outside the usual course of medical practice *and* without legitimate medical purpose.

In support of his argument, Nelson cites language in *United States v. Varma*, 691 F.2d 460, 462 (10th Cir. 1982). There, we were presented with an appeal by a doctor who argued the government failed to present sufficient evidence to prove he illegally distributed

---

[1]The instructions were omitted from the original record; they are not numbered. We note that two other instructions used very similar language.

prescription drugs. *Id.* at 461. In finding the evidence sufficient in that case, we said that the government was required to prove "[t]hat the defendant prescribed the drug without a legitimate medical purpose *and* outside the usual course of professional practice." *Id.* at 462 (emphasis added) (quoting *United States v. Rosen*, 582 F.2d 1032, 1033 (5th Cir. 1978)). Thus, it seems that the district court in the instant case did deviate from the literal wording in *Varma* in instructing the jury by using the disjunctive.

We note initially that there is considerable room to doubt whether this dispute is of any importance. *See, e.g., United States v. Kirk*, 584 F.2d 773, 784 (6th Cir. 1978) (citing authority that "[T]here is no difference in the meanings of the statutory phrase, 'In the usual course of professional practice' and the regulations' phrase, 'legitimate medical purpose.'"). It is difficult to imagine circumstances in which a practitioner could have prescribed controlled substances within the usual course of medical practice but without a legitimate medical purpose. Similarly, it is difficult to imagine circumstances in which a practitioner could have prescribed controlled substances with a legitimate medical purpose and yet be outside the usual course of medical practice. When asked at oral argument if the two phrases were not merely two ways of saying the same thing, appellant's counsel was unable to explain satisfactorily how or whether it might make a difference if the jury had been instructed in the conjunctive as he had requested. Nevertheless, recognizing the limits of our imagination, we are hesitant to say that it never could make a difference, and we proceed to consider Nelson's argument.

We conclude that the better view is that there was no error in the instruction. A practitioner has unlawfully distributed a controlled substance if she prescribes the substance either outside the usual course of medical practice or without a legitimate medical purpose. We base our conclusion on the wording of the governing regulation (21 C.F.R. § 1306.04(a)) and on *United States v. Moore*, 423 U.S. 122, 124 (1975) ("[R]egistered physicians can be prosecuted under § 841 when their activities fall outside the usual course of professional practice.").

In reaching this conclusion, we first determine that we are not bound by the language of *Varma*, 691 F.2d at 462, on which Nelson relies. The only issue raised in that appeal was the sufficiency of the evidence. 691 F.2d at 461. Nothing in the analysis or rationale of the case is dependent on the recitation of the element in question in the conjunctive. We proceed, then, to determine whether the conjunctive statement contained in defendant Nelson's requested instruction is required. We find that it is not.

We conclude that *Moore* is controlling on this point. The issue in *Moore* was whether a licensed physician who was also registered under the Controlled Substances Act, 21 U.S.C. §§ 801 *et seq.*, could be prosecuted under section 841 for dispensing or distributing controlled substances. 423 U.S. at 124. The point now at issue before this court was not the precise focus of that opinion, so it could be accurately said that what the Court said on the point is, like our own statement in *Varma*, not binding here. We do not, however, approach opinions of the Supreme Court with a view to reaching the narrowest construction possible.

- 10 -

Instead, we have said that "this court considers itself bound by Supreme Court dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled by later statements." *Gaylor v. United States*, 74 F.3d 214, 217 (10th Cir. 1996). Although the 1975 *Moore* opinion is not particularly "recent" (which is of course a relative term), we believe it cannot be disregarded because of the careful analysis reflected in the opinion. The Court there expressed its holding as being that "registered physicians can be prosecuted under § 841 *when their activities fall outside the usual course of professional practice*." 423 U.S. at 124 (emphasis added).

One of the issues raised by the defendant physician in *Moore* was whether a physician who was registered under the Controlled Substances Act, and thus authorized to prescribe a Schedule II controlled substance, could be prosecuted under 21 U.S.C. § 841 for prescribing such a substance under any circumstances. The physician argued that registered physicians could be prosecuted only under other provisions of the Controlled Substances Act, unlike the usual defendant charged with unlawful distribution in violation of the Act. The defendant physician also argued that he could not be prosecuted under section 841, even if registrants were not universally exempt, because the charged conduct was authorized under the Act. *Id.* at 138. In rejecting these contentions (and particularly the second, which is the subject of Part III of the opinion), the Court repeatedly referred to the concept that a physician could be prosecuted if his activities were outside the course of practice. For example, the Court noted that under the Harrison Act, which the Controlled Substances Act

had replaced, "physicians who departed from the usual course of medical practice were subject to the same penalties as street pushers" and that Congress had intended the Controlled Substances Act to be more, not less, strict. *Id*. at 139.[2]

In sum, the Court's dicta in *Moore* was repeated several times and was closely connected to the Court's analysis of the issues raised. We therefore are convinced that *Moore* is controlling on the issue in this appeal. We also note that another circuit appears to read *Moore* as we do. *See United States v. Cuong*, 18 F.3d 1132, 1137-38, 1141 (4th Cir. 1994).

If we did not regard the *Moore* dictum as controlling, we would still reach the same result based on analysis of the statutes and the applicable regulation. Nelson was charged under the relevant conspiracy statute, 21 U.S.C. § 846, with committing the substantive offense proscribed under 21 U.S.C. § 841(a)(1): "Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally to . . . distribute[] or dispense[] a controlled substance . . . ." In turn, 21 U.S.C. § 822(b) authorizes practitioners to dispense controlled substances "to the extent authorized by their registration and in conformity with the other provisions of this subchapter."

---

[2]Dictum in one of our earlier cases, *United States v. Bartee*, 479 F.2d 484, 488 (10th Cir. 1973) ("when a medical practitioner issues a prescription which is not for a legitimate medical purpose *and* is not in the usual course of his professional practice, then he does violate the statute") (emphasis added; original emphasis omitted), which was followed in *United States v. Jobe*, 487 F.2d 268, 269 (10th Cir. 1973), would have supported the argument of defendant in the instant case, but we think that *Moore* effectively, although implicitly, overruled those cases to the extent that they could be said to have been controlling in the first place.

The exact extent of the authorization is described in 21 C.F.R. § 1306.04(a): "A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." In other words, a practitioner is authorized to dispense controlled substances only if he acts with a legitimate medical purpose *and* in the usual course of professional practice. Conversely, a practitioner would be unauthorized to dispense a controlled substance if he acts without a legitimate medical purpose *or* outside the usual course of professional practice.

We hold that the instruction in the instant case correctly stated the law, based on our reading of *Moore* and the inference that necessarily follows from the wording of the applicable regulation.

## III

*Conclusion*

For the reasons detailed above, we hold that the government presented sufficient evidence from which a reasonable jury could find beyond a reasonable doubt that Nelson participated in a conspiracy to distribute prescription drugs outside the usual course of professional practice and to launder the proceeds of that distribution. We also hold that the jury instruction as to the conspiracy to distribute count of the indictment was not erroneous.

Accordingly, we AFFIRM Nelson's conviction.