

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-27-2006

# USA v. Rottschaefer

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4015

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Rottschaefer" (2006). *2006 Decisions.* Paper 1208.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1208

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 04-4015 and 05-1229

UNITED STATES OF AMERICA

v.

BERNARD ROTTSCHAEFER,
Appellant

Appeals from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal No. 03-cr-00162)
District Judge: Honorable Gary L. Lancaster

Argued March 3, 2006

Before: RENDELL, BECKER and GREENBERG, <u>Circuit</u> <u>Judges</u>.

(Filed: April 27, 2006)

Irving M. Green
1092 Fifth Avenue
New Kensington, PA 15608

Eli D. Stutsman     [ARGUED]
13th Floor
621 Southwest Morrison
Portland, OR 97205

John D. Ceraso
1725 Fifth Avenue
Arnold, PA 15068-4417
  *Counsel for Appellant*

Mary M. Houghton     [ARGUED]
Laura S. Irwin
Paul M. Thompson
Office of the U.S. Attorney
700 Grant Street, Suite 400
Pittsburgh, PA 15219
  *Counsel for Appellee*

---

OPINION OF THE COURT

---

RENDELL, *Circuit Judge*.

Bernard Rottschaefer, M.D. challenges his convictions and sentence on 153 counts of a 208-count indictment charging unlawful distribution of controlled substances, in violation of 21 U.S.C. § 841(a)(1). At trial, five of Rottschaefer's patients testified that he fed their drug addictions by prescribing them Xanax, Oxycontin, and other addictive painkillers; four of them testified that they performed sexual favors in exchange for the prescriptions. Rottschaefer seeks a new trial based on alleged prosecutorial misconduct, ineffective assistance of counsel and evidence that a government witness perjured herself at trial. We conclude that these claims lack merit and will affirm Rottschaefer's convictions. We will vacate his sentence and remand for resentencing in accordance with *United States v. Booker*, 543 U.S. 220 (2005).

**I.**

2

Rottschaefer's prosecutorial misconduct and ineffective assistance claims are based on his theory that he was improperly tried and convicted under a medical malpractice or negligence standard, rather than the higher standard of proof required for criminal convictions.[1]  He argues that the "no legitimate medical reason" standard used by the prosecution throughout the trial, without defense objection, equates to a civil, rather than a criminal, standard of liability.

This argument finds no support in the law.  The Controlled Substances Act ("CSA"), under which Rottschaefer was convicted, provides:  "Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally–(1) to manufacture, distribute, dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."  21 U.S.C. § 841(a)(1).  Physicians are exempt from this provision to the extent that they act lawfully, *see United States v. Moore*, 423 U.S. 122, 131 (1975), but they are subject to criminal liability when their drug prescribing and dispensing activities fall "outside the usual course of professional practice," *id.* at 124.  The CSA's implementing regulations provide that, to be effective, a prescription "must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice," and that a person who knowingly issues an

_____

[1]We note that these claims provide rather awkward vehicles for Rottschaefer's substantive arguments.  Rottschaefer's real contentions are that the law was somehow confused in the District Court and that the evidence presented was insufficient to support a conviction under the statute.  Rather than challenging the jury instructions or the sufficiency of the evidence directly, however, he chose to proceed on prosecutorial misconduct and ineffective assistance grounds.

3

ineffective prescription "shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances." 21 C.F.R. § 1306.04(a). Thus, the regulations clearly state that prescribing drugs for other than a "legitimate medical purpose" is a basis for criminal liability under the CSA.

Moreover, courts of appeals frequently use the "no legitimate medical purpose" standard to define physician liability under § 841(a)(1). For example, the Fifth Circuit Court of Appeals stated the elements of the offense as follows:

> To convict Dr. Norris of violating 21 U.S.C. § 841(a)(1), the government was required to prove "(1) that he distributed or dispensed a controlled substance, (2) that he acted knowingly and intentionally, and (3) that he did so other than for a legitimate medical purpose and in the usual course of his professional practice."

*United States v. Norris*, 780 F.2d 1207, 1209 (5th Cir. 1986) (quoting *United States v. Rosen*, 582 F.2d 1032, 1033 (5th Cir. 1978)). The Court explained that, "[a]lthough the third element is not expressly required by § 841," it derives from the language in the "pertinent regulations" quoted above. *Id.* (quoting 21 C.F.R. § 1306.04(a)). Other courts adopt the same approach. *See, e.g.*, *United States v. Nelson*, 383 F.3d 1227, 1231-32 (10th Cir. 2004) ("A practitioner has unlawfully distributed a controlled substance if she prescribes the substance either outside the usual course of medical practice or without a legitimate medical purpose."); *United States v. Voorhies*, 663 F.2d 30, 33 (6th Cir. 1981) (rejecting defendant's challenge to jury instruction based on 21 C.F.R. § 1306.04 and incorporating "other than a legitimate medical purpose" standard).

4

Finally, "there is considerable room to doubt whether" the distinction between the "no legitimate medical reason" and the "outside the usual course of professional practice" standards "is of any importance." *Nelson*, 383 F.3d at 1231. Several courts have held that "there is no difference in the meanings of the statutory phrase, '[i]n the course of professional practice' and the regulations' phrase, 'legitimate medical purpose,'" *United States v. Kirk*, 584 F.2d 773, 784 (6th Cir. 1978) (citing cases); the Fourth Circuit Court of Appeals goes even farther, holding that the "without a medical purpose" standard that Rottschaefer challenges is "*more* strict than [the "outside the usual course of professional practice" standard] required by *Moore*." *United States v. Cuong*, 18 F.3d 1132, 1138 (4th Cir. 1994) (emphasis added). As the *Nelson* court observed:

> It is difficult to imagine circumstances in which a practitioner could have prescribed controlled substances within the usual course of medical practice but without a legitimate medical purpose. Similarly, it is difficult to imagine circumstances in which a practitioner could have prescribed controlled substances with a legitimate medical purpose and yet be outside the usual course of medical practice.

383 F.3d at 1231.

Thus, the prosecution acted well within the law when it defined Rottschaefer's crimes in terms of prescribing narcotics for "no legitimate medical reason." Rottschaefer has not explained to our satisfaction how an improper standard was applied in his trial at all, much less how the application of that standard amounted to prosecutorial misconduct or ineffective assistance of counsel. We will not reverse his convictions on these grounds.

5

Rottschaefer also appeals the District Court's denial of his motion for a new trial under Fed. R. Crim. P. 33. Rottschaefer moved for a new trial based on evidence, discovered after trial, that one of his former patients perjured herself at his trial. The patient, Jennifer Riggle, had testified at trial that she traded sex with Rottschaefer for various prescriptions. After trial, Rottschaefer's attorney discovered 529 pages of handwritten correspondence between Riggle and her then-boyfriend in which Riggle denied having sex with Rottschaefer and explained that she had agreed to lie in order to receive a more favorable sentence on drug charges pending against her in state court. In the letters, Riggle describes conversations in which DEA agents suggested that she would be rewarded for "good" testimony[2] and explains her decision to go along with their suggestions.[3]

The District Court denied Rottschaefer's motion. Although he found "no reason to doubt [the letters'] authenticity," the District Court Judge concluded that the letters did not justify a new trial because they did no more than provide impeachment material to the defense and were cumulative of other evidence adduced at trial. Because they were not

---

[2]"They're saying he was bribing patients with sex for pills, but it never happened to me. DEA said they will cut my time for good testimony. I don't want to be a snitch but what should I do? Everyone else is testifying against him."

[3]"I had just prayed & asked God to give me the confidence to be able to lie about the Dr. just this once. I am not a good liar & I'm scared. The only reason I'm doing it is cause he's pretty much already had & he doesn't deserve to be practicing. He has ruined many lives & some people even O.D.'d on the Oxy's."

made under oath, Riggle's statements in the letters would have been admissible only for impeachment purposes; the evidence was cumulative because one of Rottschaefer's witnesses had testified at trial that Riggle had told her that she had lied about committing sex acts with Rottschaefer to receive a deal from the DEA.

"Rule 33 motions for a new trial are directed to the district court's discretion, and our function on appeal is to decide whether the trial judge abused that discretion or failed to exercise it." *United States v. Iannelli*, 528 F.2d 1290, 1292 (3d Cir. 1976). Although we find the District Court's analysis somewhat perfunctory, we are not convinced that it abused or failed to exercise its discretion in denying Rottschaefer's motion.

A district court may only grant a new trial on the basis of newly discovered evidence where five requirements are met:

- the evidence was, in fact, newly discovered, *i.e.*, discovered since trial;

- facts are alleged from which the court can infer diligence on the part of the movant;

- the new evidence is not "merely cumulative or impeaching";

- the evidence is material to the issues involved; and

- the evidence is such, and of such nature, that on a new trial it would probably produce an acquittal.

*United States v. Saada*, 212 F.3d 210, 216 (3d Cir. 2000). The defendant bears a "'heavy burden' in meeting these requirements." *Id.* (quoting *United States v. Ashfield*, 735 F.2d 101, 112 (3d Cir. 1984)).

As an initial matter, we agree with the District Court's assessments of the letters as

7

"cumulative" and "impeaching." But we must consider several arguments that the Court declined to address as to why the letters are not "*merely* cumulative or impeaching." First, Rottschaefer argues that the letters are "exculpatory." *Cf. Saada*, 212 F.3d at 216 (implying that evidence that is "exculpatory" is not "only impeaching"). This contention lacks merit. While the letters unquestionably undermine Riggle's testimony that she traded sexual favors for prescriptions, they do not exculpate Rottschaefer from the underlying offense. The crime for which Rottschaefer was convicted was not, as he claims, trading drugs for sex. Rather, he was convicted of unlawfully distributing controlled substances outside the course of professional practice. If anything, Riggle's letters *reinforce* other evidence that Rottschaefer's prescription practices fell outside of the bounds of ordinary professional practice.[4]

Rottschaefer also argues that the evidence of Riggle's perjury raises doubts about the testimony of three other government witnesses. Evidence introduced at trial established that the four women who testified that they exchanged sex for drugs with Rottschaefer, including Jennifer Riggle, knew each other and worked together to procure Oxycontin from Rottschaefer to abuse and sell. Rottschaefer also claims that each of the four women initially denied having sexual contact with Rottschaefer. He argues that evidence of Riggle's perjury would have raised an inference that the other witnesses were

---

[4]For example, Riggle's letters state: "[Rottschaefer] has ruined many lives & some people even O.D.'d on the Oxy's," and "See, the doctor is still in the wrong for not wanting to see Xrays of my back before prescribing those pills. All he did was have me bend over to feel my spine & just by that he decided I was in a lot of pain."

8

also lying.

This argument fails because the record already contained evidence of Riggle's perjury from which Rottschaefer could have argued that the testimony of the other witnesses was tainted. As the District Court pointed out, Deborah Peterson, who had been incarcerated at Westmoreland County Prison with Riggle, testified at trial that Riggle had confided in Peterson about lying in Rottschaefer's case. Specifically, Peterson said, "what [Riggle] ended up telling me was that she flat outright lied about having committed some sexual act with Dr. Rottschaefer to receive a reduced sentence or possibly no penalty at all." When defense counsel questioned Peterson further about Riggle's motives for lying, Peterson responded:

> [T]o state like pretty much in exact terms the reason and how she came about doing it was as she was being questioned by the federal agents, I guess, in prison, insinuated that–about some kind of sexual acts could this have possibly occurred, and she took it as an opportunity–she seen it as an opportunity, and that's exactly how she stated it to me, to help herself if she would go along with that.

Peterson's testimony calls the other witnesses' testimony into question in precisely the same manner as Riggle's letters. Of course, evidence of Riggle's perjury in the form of Riggle's own letters might have been more compelling than Peterson's testimony. But it would not have added any new facts to the jury's calculus, and is therefore "merely cumulative."

Furthermore, although the District Court did not discuss this point, we note that the evidence proffered by Rottschaefer after trial would not "probably produce an acquittal."

*Saada*, 212 F.3d at 216. As discussed above, sexual contact with patients was not an element of the convicted offense. A review of the verdict demonstrates that the jury understood this point–it acquitted Rottschaefer of several counts despite testimony of sexual favors, and convicted him of others with respect to which there was *no* evidence of sexual contact.[5] On this record, we cannot conclude that further evidence that Riggle did not engage in sexual activity with Rottschaefer would have affected the jury's verdict.

Moreover, the record contains sufficient evidence, independent of Riggle's testimony, to uphold Rottschaefer's convictions. The government's expert, Dr. Douglas Clough, testified that there was no evidence in Riggle's medical records of pain that would justify prescribing OxyContin or other addictive narcotics. He also noted that Rottschaefer never ordered or performed diagnostic tests regarding the back problem for which he prescribed the drugs. Finally, Dr. Clough opined that there was "no legitimate reason to keep prescribing the chronic long-acting potentially addicting narcotic . . . without an attempt . . . to evaluate and treat the back pain without using some therapeutic

---

[5]Rottschaefer's trial counsel acknowledged this point at Rottschaefer's sentencing hearing, when he said:

> If you look at that verdict, they acquitted him, I believe, of 53 counts involving the same five women who testified for the government because of various reasons that the Court is aware of. The jury apparently to reach that kind of verdict, if you analyze that verdict in any way at all, wasn't based on sex for drugs. It was based on the testimony of a supposedly expert witness for the government who went through all these multitude of charts and went into expressing his opinion as to what was required in order to issue a prescription . . . .

10

modality other than the chronic long-acting narcotic." This testimony, particularly in conjunction with the evidence that Rottschaefer had issued prescriptions to other women for apparently illicit purposes, amply supports the jury's guilty verdicts on the charges that Rottschaefer prescribed narcotics to Jennifer Riggle outside the usual course of professional practice.

Thus, although we acknowledge that the District Court could have engaged in a more thorough analysis of Rottschaefer's claims, we cannot conclude that it abused its discretion in denying his Rule 33 motion for a new trial. We also decline Rottschaefer's invitation to exercise our "supervisory powers," pursuant to *Mesarosh v. United States*, 352 U.S. 1 (1956), to grant him a new trial. We do not think that the situation before us is comparable to *Mesarosh*. We will accordingly affirm the District Court's decision and Rottschaefer's convictions.

## III.

Rottschaefer was sentenced to 78 months in prison on September 24, 2004, under the mandatory Guidelines regime, based on drug amounts found by the District Court. He argues that his sentence violated *United States v. Apprendi*, 530 U.S. 466 (2000), and *United States v. Booker*, 543 U.S. 220 (2005). Having determined that *Booker* issues are best resolved by the District Court in the first instance, we will vacate his sentence and remand for resentencing in accordance with that opinion. *See United States v. Davis*, 407 F.3d 162, 165 (3d Cir. 2005) (en banc).

## IV.

11

For the foregoing reasons, we will affirm Rottschaefer's convictions. We will vacate his sentence and remand for resentencing under *Booker*.