LEVINE, J.
Appellant presents two issues for our review: whether the trial court erred in giving an .allegedly incorrect jury instruction on the elements of trafficking and delivery of prescription narcotics, and whether the state made allegedly improper remarks during closing argument, which require a new trial. We find that the jury instructions, which enabled the jury to convict if the prescription was not written in good faith or not in the course of professional practice, were not incorrect, and as such, did not constitute error. We further find that the prosecutor’s remarks during closing arguments do' not require a new trial. As such, we affirm.
Appellant, a medical doctor, was convict; ed of racketeering; conspiracy to commit racketeering; seven counts of trafficking in oxycodone; delivery of methadone, al-prazolam, oxycodone, and hydrocodone; and conspiracy to traffic, in oxycodone. The convictions arose following a DEA investigation. During the investigation, five undercover officers posing as patients went to the pain management clinic where appellant worked.
Appellant prescribed 90 oxycodone 30 mg tablets, 150 oxycodone 15- mg tablets, 40 meloxicam tablets, and 60 Soma tablets to an undercover agent working under the name “David Hays,” who had allegedly never taken narcotics before. During a follow up visit a month later, appellant increased the oxycodone after Hays .reported running out. During a third visit, appellant prescribed a combination of oxy-codone, methadone, alprazolam (Xanax), and meloxicam.
Appellant prescribed 150 oxycodone 30 mg tablets, 60 oxycodone 15 mg tablets, and 60 Soma tablets to another undercover agent working under the name “Larry Olsen.” Appellant indicated a willingness to prescribe the medications before he even conducted an examination. During a return visit, appellant increased the quantities of oxycodone even though Olsen indicated he had no pain.
Without conducting a physical exam, appellant told another undercover agent, working under the name “Brian Cross,” there was nothing wrong with him. Appellant then offered to treat-Cross with “medium doses of medications.”
Appellant told' another undercover agent, working under the name “Gregory Martin,” that his MRI showed no abnormalities. Nevertheless, appellant offered to treat Martin for six months and prescribed 160 oxycodone 30 mg tablets and 60 Soma tablets. Appellant increased the oxycodone during a follow up visit a month later after Martin told appellant he had run out.
In the waiting room of the clinic, another undercover agent working under the name “Bill Rix” overheard people talking about the amount of pills they would get. Doctors at the clinic prescribed oxycodone and Soma to Rix. During a return visit for Rix, appellant increased the oxycodone, prescribed Soma, and added Lortab (hy-drocodone). Rix asked the owner of the clinic about its referraí program. The owner told him, in appellant’s presence, that the clinic does a physical exam and then refers the patient for an MRI because “it makes us look like we’re not dirty.” Appellant then commented to Rix, “But they have to pay for it.”
The state’s expert, Dr. Reuben Hoch, a board-certified anesthesiologist and pain medicine specialist, opined that appellant did not meet the standard of care in the community. Appellant did not ask the *933 “patients” how their pain started or, when their injury occurred. Appellant prescribed dangerous combinations.and quantities of drugs. According to Dr. Hoch, appellant should have started with the lowest dosage possible for a shorter amount of time. Additionally, he should have decreased medication over time, not increased it. Significantly, appellant did not ask enough questions during follow-up visits, including asking why the “patients” had run out of medication early.
Dr. Hoch’s review of other patient files showed that most patients received oxyco-done and Xanax. Other patients also received high doses of methadone and Perco-cet. In Dr. Hoch’s opinion, the patient files were not reflective of the legitimate practice of pain management. For example, different forms of treatments were not offered to patients, and there was no individualized assessment of each patient leading to the diagnosis and treatment.
The state also elicited testimony showing that appellant prescribed significantly more oxycodone when compared with other practitioners in the United States: 295,-000 dosage units compared to 24,000 dosage units. If there were 2,000 patients at the clinic, the average patient would be prescribed 150 oxycodone tablets.
A former doctor at the clinic, who was charged as a codefendant and pled guilty, testified that the clinic’s “end game” was to “fly under the radar, to avoid scrutiny, and allow the patients to get the narcotics they were looking for.” The clinic fired him for discharging too many patients, reducing pain medication prescriptions, and not accepting enough patients.
The jury found appellant guilty, resulting in the ensuing appeal.
Jury instructions “are subject to the contemporaneous objection rule, and, absent an objection at trial, can be raised on appeal only if fundamental error occurred.” State v. Delva, 575 So.2d 643, 644 (Fla.1991). Fundamental error occurs when the error “reach[es] down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.” State v. Weaver, 957 So.2d 586 (Fla.2007) (quoting Delva, 575 So.2d at 644-45).
Appellant argues that the trial court committed reversible error in instructing the jury on the substantive elements of trafficking and delivery of prescription narcotics, which served as the predicates for the racketeering charges. As to the trafficking and delivery charges, the trial court instructed the jury it had to find that appellant wrote the prescription “not in good faith or not in the course of Defendant’s professional practice.” (emphasis added). Appellant argues that the instructions should have included the conjunctive “and” rather than the disjunctive “or.” In support, appellant, relies on section 893.05(l)(a), Florida Statutes, which provides that “[a] practitioner, in good faith and in the course of his or her professional practice only, may prescribe, administer, dispense, mix, or otherwise prepare a controlled substance.”
Initially, this issue is not preserved because appellant never objected to the use of an “or” rather than an “and” in the jury instructions. See Johnson v. State, 969 So.2d 938, 954 (Fla.2007). Thus, we review the jury instructions for fundamental error.
Generally, “good faith” and “in the course of professional practice” are affirmative defenses, not elements of the offenses, because section 893.05(1) is separate from the delivery and trafficking statutes. See Norman v. State, 159 So.3d 205, 226 (Fla. 4th DCA 2015) (explaining- that *934 an exception contained in a subsequent or separate clause or statute is an affirmative defense); King v. State, 336 So.2d 1200, 1202 (Fla. 2d DCA 1976) (recognizing that section 893.05 sets forth an affirmative defense).
■Appellant argues that “good faith and in the course of professional practice” became elements when the state alleged them in the information. Even accepting appellant’s argument, no fundamental error occurred. If anything, the inclusion of this language actually increased the state’s burden and relieved appellant of the burden of production.
■Further, the use of the word “or” rather than “and” was correct. Section 893.05(1) requires that a practitioner act both in good faith and in the course of his professional practice for the exception to apply. ThuSs. a practitioner who does not act in good faith or who. does not act in the course of his professional practice would not fall within the exception.
Federal case law interpreting 21 C.F.R, § 1306.04 supports this conclusion. That regulation permits prescriptions for controlled substances if they are “issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice.” In United States v. Dileo, 625 Fed.Appx. 464 (11th Cir.2015), the court found no error in advising the jury that it had to find either that the defendant 'prescribed medications outside the usüal course of medical practice or for other than legitimate medical purposes. The court reasoned:'
[Ujnder the plain language of the regulation, in order to qualify for the exception, a defendant must have provided the prescription for both a legitimate medí-' cal purpose and while acting in the usually course of . his profession. Without both, the defendant is subject to prosecution. Hence, the Government needed only to prove one of the two prongs and the Defendants were on notice because the language of the section clearly mandated that requirement.
Id. at 477-78 (citation omitted).
Similarly, in United States v. Nelson, 383 F.3d 1227 (10th Cir.2004), the court found no error in instructing the jury that it could find defendant guilty if the prescriptions were made without a legitimate purpose or outside the course of professional practice. In reaching this conclusion, the court commented:
It is difficult to imagine circumstances in which a practitioner could have prescribed controlled substances within the usual course of medical practice but without a legitimate medical purpose. Similarly, it is difficult to imagine circumstances in which a practitioner could have prescribed controlled substances with a legitimate medical purpose and yet be outside the usual course of medical practice. .
Id. at 1231. We agree with the reasoning of these federal cases and thus find that no fundamental error occurred. We further find that even if this jury instruction issue were preserved, no revérsible error occurred. • ■
Appellant next contends that the state made improper remarks in closing argument, requiring a new trial. Specifically, appellant asserts the prosecutor improperly attacked defense counsel when he argued, “I’m not really sure how [defense counsel] could get up there and make that argument in good faith” and claimed that defense counsel “stuck his head in the sand.” Appellant further asserts the prosecutor improperly attacked him when the prosecutor referred.to him as “poor, poor [appellant]” and then told the jury, “[D]on’t be fooled, [appellant] is not the *935 victim of anything, he is the drug dealer that he is portrayed as being.”
Appellant failed to make specific, contemporaneous objections to the majority of the comments. See Jones v. State, 760 So.2d 1057, 1058 (Fla. 4th DCA 2000). Further, he failed to move for a curative instruction or mistrial when the trial court effectively sustained an objection,- thereby failing to preserve the issue for review. See Kearse v. State, 770 So.2d 1119, 1129 (Fla.2000). Wé find that ■ these unpre-served statements did not constitute,fundamental error. As to the one preserved statement — the prosecutor’s statement that defense counsel “stuck his head in the sand” — we find no reversible error,
In summary, we find both issues appellant raises do not constitute reversible error. Thus, we affirm.

Affirmed.

CIKLIN, G.J., and FORST, J., concur.