NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1335
_____

UNITED STATES OF AMERICA

v.

MILAD SHAKER,
                                        Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-18-cr-0260-001)
District Judge:  Hon. Cathy Bissoon
_____

Submitted Under Third Circuit LAR 34.1(a)
September 22, 2020

Before:   SMITH, *Chief* Judge, McKEE, and JORDAN, *Circuit Judges.*

(Filed:  September 24, 2020)
_____

OPINION*
_____

JORDAN, *Circuit Judge*.

Dr. Milad Shaker operated Shaker Urgent Care, a medical facility in Pennsylvania.

One of his patients was TS, a woman who sought treatment from Shaker for migraines.

_____

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Shaker prescribed her highly addictive opioids to treat her pain. He also began a sexual relationship with her, while unnecessarily prescribing her large quantities of the habit-forming drugs. Shaker then leveraged TS's addiction to those drugs to continue the sexual relationship. As a result of his actions, he was indicted on, and convicted of, numerous counts of unlawful distribution of controlled substances, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C).

Shaker now appeals, making three arguments – first, that there is insufficient evidence to sustain his conviction; second, that the District Court abused its discretion in denying his request for a new trial; and third, that the District Court erred in applying a sentencing enhancement for abuse of a position of trust. He is wrong on all counts. Accordingly, we will affirm.

## I.     BACKGROUND

In June of 2014 TS went to Shaker Urgent Care because she was suffering from a migraine. She met with a physician's assistant, who prescribed her "a relatively small quantity" of Fioricet, a potentially addictive medication. (App. at 533.) TS returned to Shaker Urgent Care about two weeks later, meeting with Shaker himself. During that visit, Shaker tripled her previous Fioricet prescription and also prescribed Percocet, a highly addictive opioid medication. TS returned to Shaker Urgent Care twice more over the next few months, during which visits Shaker prescribed ever-increasing amounts of addictive drugs.

TS's visits to Shaker were so frequent that he ultimately became her primary care physician. Soon after, Shaker obtained TS's contact information from her patient chart

2

and started texting her.  They quickly began a sexual relationship.  The relationship

continued for years, during which time Shaker continued to prescribe TS large quantities

of pain medication.  He continued the prescriptions even when contacted by another

doctor, who had performed surgery on TS, informing him that TS was doing well, feeling

little pain, and didn't feel that she needed medication any longer.  Drug addicted and with

a broken marriage, TS eventually left home and ended up living in a crack house.

Shaker's actions came to the attention of law enforcement authorities, and, in

December of 2018, he was indicted by a grand jury on dozens of counts relating to his

prescription practices.  He went to trial and was convicted on 14 of those counts, all

relating to the prescriptions he wrote for TS.  Shaker then filed a motion for judgment of

acquittal or for a new trial.  After full briefing, the Court denied the motion.  At

sentencing, Shaker was given 41 months' imprisonment, based on a Sentencing

Guidelines calculation that included a two-level enhancement for abuse of a position of

trust, pursuant to U.S.S.G. § 3B1.3.

Shaker now appeals his conviction and sentence.

II.     DISCUSSION[1]

Shaker raises three arguments on appeal.  First, he says that there is insufficient

evidence that he was prescribing medication to TS outside the usual course of practice,

and thus that his convictions must be overturned.  Second, he asserts that even if he is not

---

[1] The district court had jurisdiction pursuant to 18 U.S.C. § 3231.  We have
jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

3

entitled to a judgment of acquittal, the District Court should have ordered a new trial because the verdict "was against the weight of the evidence[.]" (Op. Br. at 41.) Finally, he contends that the District Court erred in applying the two-level sentencing enhancement for abuse of a position of trust.

A.    **There Is Sufficient Evidence to Sustain Shaker's Convictions**[2]

All of Shaker's counts of conviction are for violations of 21 U.S.C. § 841(a)(1) and (b)(1)(C), which criminalizes the knowing or intentional distribution of a "controlled substance" "[e]xcept as authorized by this subchapter[.]" Physicians are not exempt from that prohibition. "The Supreme Court has held that drug distribution by a physician violates this provision … when the distribution occurs outside the usual course of professional practice." *United States v. Polan*, 970 F.2d 1280, 1282 (3d Cir. 1992). The dispute here centers on whether Shaker acted outside the usual course of professional practice.[3]

---

[2] When reviewing a verdict for sufficiency of the evidence, we must decide "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 424-25 (3d Cir. 2013) (en banc) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (emphasis in original)). The government contends that we should review only for plain error because Shaker's motion for judgment of acquittal in the District Court was untimely and therefore not preserved. Because we conclude that Shaker loses even under the standard more favorable to him, we need not address whether plain error review should apply.

[3] Shaker does not dispute that he knowingly dispensed a controlled substance. Thus, the only dispute is whether his dispensing of the drugs was authorized by law, as would be the case if he had legitimately prescribed the medications.

4

Shaker believes that there is insufficient evidence to show that he did so because he documented the prescriptions he wrote for TS on her chart and because, he asserts, they were "for a legitimate medical purpose." (Op. Br. at 37.) The government, however, presented ample evidence upon which a rational juror could conclude otherwise.[4]

The government's expert witness, Dr. Stephen Thomas, testified that "once sex is introduced into the doctor-patient relationship, the nature of the scope of that relationship … is completely broken." (App. at 521.) He further testified that "[t]here is no way in which one can act in good faith in the usual course of a professional practice while acting in an unprofessional manner[,]" and that "the scope of the doctor-patient relationship absolutely precludes a sexual relationship with that person." (App. at 521.) Dr. Thomas thus presented the jury with testimony indicating that, once sex entered the picture, any

---

[4] There is some uncertainty regarding how "the usual course of professional practice" terminology relates to the "for a legitimate medical purpose" terminology for purposes of criminal liability under § 841. The former phrase derives from Supreme Court precedent governing the applicability of § 841 to physicians. *United States v. Moore*, 423 U.S. 122, 124 (1975). The latter phrase comes from the regulations implementing § 841. 21 C.F.R. § 1306.04(a).

The government contends that a jury need only find *either* that a prescription was made outside the usual course of professional practice *or* that it was not for a legitimate medical purpose in order to convict a physician under § 841. There is support for that proposition. *See United States v. Nelson*, 383 F.3d 1227, 1231-32 (10th Cir. 2004) ("A practitioner has unlawfully distributed a controlled substance if she prescribes the substance either outside the usual course of medical practice or without a legitimate medical purpose."). But we have never opined on the issue, and we need not do so now, as the jury was instructed that, to convict Shaker, it needed to find both that the prescriptions were made outside the usual course of professional practice and not for a legitimate medical purpose.

5

prescriptions Shaker wrote for TS would have been outside the usual course of professional practice.

Dr. Thomas also testified that the prescriptions in question were not justified by any legitimate medical purpose. In great detail, he explained why numerous prescriptions Shaker wrote for TS were medically inappropriate, independent of the sexual relationship. That evidence touched on all of the counts on which Shaker was convicted. Giving specifics, Dr. Thomas testified that, soon after starting to see Shaker, TS displayed "the telltale signs of abuse of the drug as opposed to medical use of the drug." (App. at 540.) He also noted that for certain drugs, the amount Shaker prescribed was "higher than would ever be deemed to be medically reasonable and necessary given prescribing instructions for the drug for any reason[.]" (App. at 566.) There was thus more than sufficient evidence in the record to support a guilty verdict on each of the 14 counts of conviction.

On appeal, just as at trial, Shaker argues against Dr. Thomas's testimony by relying on the testimony of his own expert witness, Dr. Bruce Nicholson.[5] Dr. Nicholson testified that the prescriptions Shaker wrote were issued in the regular course of practice and for a legitimate medical purpose. Shaker believes we should credit the testimony of Dr. Nicholson rather than that of Dr. Thomas. In essence he is asking us to become a second jury and weigh the credibility of the evidence that was presented at trial. But that

---

[5] Shaker also argues that Dr. Thomas falsely testified that he wrote prescriptions without adequate documentation. Shaker says that he did adequately document the prescriptions. That dispute is irrelevant. Shaker's criminal liability does not turn on whether he formally documented his inappropriate prescriptions.

is not our role. "[W]e must be ever vigilant ... not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting [our] judgment for that of the jury." *Caraballo-Rodriguez*, 726 F.3d at 433 (internal quotation marks omitted) (alterations in original). We assess only whether the evidence was strong enough to allow a rational trier of fact to find Shaker guilty beyond a reasonable doubt. *Id.* Here, it plainly was. A rational jury could easily have chosen to credit Dr. Thomas's testimony over Dr. Nicholson's, and that is apparently what happened. Shaker's sufficiency-of-the-evidence argument fails therefore.

### B.      Shaker Is Not Entitled to A New Trial[6]

Shaker next contends that the Court should have granted his motion for a new trial pursuant to Federal Rule of Criminal Procedure 33, because the jury's guilty verdict was against the weight of the evidence.[7] Because his "arguments regarding the denial of his new trial motion essentially rehash those presented in support of his insufficiency of the evidence claim[,] [h]e offers no reason for us to doubt the District Court's conclusion that no miscarriage of justice took place. Thus the Court did not abuse its discretion when it

---

[6] "We review a district court's denial of a Rule 33 motion for abuse of discretion." *United States v. Salahuddin*, 765 F.3d 329, 346 (3d Cir. 2014). "A district court can order a new trial on the ground that the jury's verdict is contrary to the weight of the evidence only if it believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002) (internal quotation marks omitted).

[7] Rule 33(a) provides that "[u]pon a defendant's motion, the court may vacate any judgment and grant a new trial if the interests of justice so require." Fed. R. Crim. P. 33(a).

declined to order a new trial." *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002).

##### C. The Application of The Sentencing Enhancement Was Proper[8]

Lastly, Shaker argues that the District Court erred in applying the two-level enhancement under U.S.S.G. § 3B1.3 for abuse of a position of trust.[9] He claims that the application of that enhancement violates the Double Jeopardy Clause of the United States Constitution because his status as a doctor (a position of trust) is already "accounted for by the underlying offense." (Op. Br. at 45.) Thus, in his view, adding the sentencing enhancement impermissibly double counts his abuse of a position of trust. He is mistaken.

Section 841 applies to anyone who distributes a controlled substance, not just physicians. So Shaker's status as a physician was not an element of his underlying criminal offense. It thus was not a violation of any law, including the Double Jeopardy Clause, to apply the abuse-of-trust enhancement in the calculation of his sentence.[10]

---

[8] We review the District Court's interpretation of the Sentencing Guidelines de novo. *United States v. McMillen*, 917 F.2d 773, 775 (3d Cir. 1990).

[9] That provision states "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels. This adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic." U.S.S.G. § 3B1.3.

[10] Shaker cites no authority for the proposition that a mistaken sentencing enhancement is a violation of the Double Jeopardy Clause. The cases he cites show, at most, that § 3B1.3 may be inapplicable if the abuse of trust at issue is already included in the base offense level. *United States v. Broderson*, 67 F.3d 452, 456 (2d Cir. 1995). That argument, however, involves the interpretation of the guidelines, not constitutional law.

**III.  CONCLUSION**

For the foregoing reasons, we will affirm the judgment of the District Court.