**UNITED STATES of America, Plaintiff**

v.

**Alfred VALDIVIESO RODRIGUEZ, et al., Defendant(s).**

**Criminal No. 07–032(JAG).**

United States District Court, D. Puerto Rico.

Oct. 24, 2007.

Julia Diaz-Rex, Maritza Gonzalez, U.S. Attorney's Office, San Juan, PR, for plaintiff.

Luis F. Camacho, Cayey, PR, Edgar R. Vega–Pabon, Vega Pabon, Rodriguez Encarnacion & Lopez Covas, San Juan, PR, Joaquin Monserrate–Matienzo, Joaquin Monserrate Matienzo Law Office, San Juan, PR, Jose R. Aguayo, Jose R. Aguayo Law Office, San Juan, PR, Juan A. Pedrosa–Trapaga, Juan A. Pedrosa Law Office, San Juan, PR, Luis R. Rivera–Rodriguez, Luis Rafael Rivera Law Office, David Ramos–Pagan San Juan, PR, Luis E. Palacios, Luis E. Palacios Law Office, San Juan, PR, Luis A. Plaza–Mariota, San Juan, PR, Ramon E. Dapena, Goldman Antonetti & Cordova, San Juan, PR, Rachel Brill, San Juan, PR, William L. Summers, pro hac vice, Summers & Vargas, Co., LPA, Cleveland, OH, Jorge E. Perez-Casellas, Bayamon, PR, Ramon M. Gonzalez-Santiago, San Juan, PR, for Defendant(s).

## OPINION AND ORDER

JAY A. GARCIA–GREGORY, District Judge.

Pending before the Court are Defendants Alfred Valdivieso Rodríguez, Maileen Lugo Torres, Juan A. Tosado–Polanco, and Norberto J. Seda Olmo's (collectively "Defendants") Motions to Dismiss. (Docket Nos. 202, 204, 206). For the reasons set forth below, the Court **DENIES** the Motions.

## FACTUAL AND PROCEDURAL BACKGROUND

In this case, a total of seven doctors, were charged in a forty one count Superseding Indictment for having participated in a scheme to distribute drugs and dispense drugs through the internet to individuals with whom they lacked a doctor-patient relationship. The Superseding Indictment charges defendants with violations of Title 21, *United States Code,* Section 841(a)(1) and 846(a) conspiracy to distribute controlled substances and distribution of controlled substances; Title 18, *United States Code,* Section 1343(wire fraud); Title 18, *United States Code,* Sections 1956(a)(1)(A)(I) and (h) (money laundering) and two forfeiture counts. One of the Government's main allegations, as stated in Count One of the indictment, is that Defendants violated the Controlled Substance Act ("CSA") by conspiring to distribute and possess with intent to distribute, outside the scope of professional

practice and not for a legitimate medical purpose, Schedule III and IV controlled substances. (Docket No. 145).

On July 13, 2007, Defendant Alfred Valdivieso Rodríguez filed a Motion to Dismiss the Superseding Indictment. (Docket No. 202). On July 16, 2007, Defendants Juan A. Tosado–Polanco, Maileen Lugo Torres and Norberto J. Seda Olmo joined the Motion to Dismiss. (Docket No. 204). Defendants argued that Puerto Rico Telemedicine Regulating Act, Law No. 227 of August 11, 1998, 20 L.P.R.A. § 6001 et seq. ("Telemedicine Law") authorized them to practice telemedicine and, therefore, allowed them to prescribe controlled substances to their internet customers. (Docket Nos. 202, 204).

Defendant Maileen Lugo Torres, also submitted a Motion to Dismiss on grounds of prosecutorial misconduct. In said motion, defendant states that as far back as September 2005 she was the subject of an investigation by the Drug Enforcement Agency ("DEA"). In order to conclude said administrative proceeding, Defendant Lugo Torres entered into a Memorandum of Agreement. Defendant alleges that in the DEA's civil investigation she incriminated herself and tacitly admitted to the allegations of illegal practice of medicine based on the internet prescriptions.

Defendant Lugo Torres contends that the charges brought against her in the Superseding Indictment were the result of a parallel civil and criminal investigation by the DEA. According to Defendant Lugo Torres, the DEA's civil investigation was part of a coordinated effort between that agency and the Department of Justice to deprive her of the constitutional privilege against self-incrimination.(Docket No. 206).

On July 26, 2007, the Government filed its responses (Docket Nos. 217, 221) and on August 23, 2007, Alfred Valdivieso Rodríguez filed his reply to response. (Docket No. 246). All of the Motions to Dismiss were subsequently referred by this Court to Magistrate–Judge Camille L. Velez Rive. (Docket Nos. 203, 219). The Magistrate–Judge recommended that both Motions to Dismiss be denied.

Regarding Defendants' contention that the Telemedicine Law allowed them to prescribe controlled substances to their internet customers, Magistrate–Judge Camille L. Velez–Rive determined in her Report and Recommendation that the Telemedicine Law only authorizes the practice of telemedicine when both the physician and the patient are physically located in the Commonwealth of Puerto Rico. According to the Magistrate–Judge, Defendants acted outside the scope of professional practice and not for a legitimate medical purpose when they carried out their telemedicine practice in several States other than Puerto Rico without having the proper licenses to do so in those jurisdictions.

Magistrate–Judge Velez–Rive also concluded in her Report and Recommendation that the Government did not engage in any prosecutorial misconduct in the handling of Defendant Lugo Torres's case. Accordingly, the Magistrate–Judge recommended that Defendants' Motion to Dismiss be denied. (Docket No. 250). On October 15, 2007, Defendants Alfred Valdivieso–Rodriguez and Maileen Lugo–Torres objected the Magistrate–Judge's recommendations. (Docket Nos. 258, 259). On October 24, 2007, Defendants Juan Manuel Ramos Gonzalez and Juan A. Tosado Polanco joined the above mentioned objections. (Docket Nos. 265, 266).

## STANDARD OF REVIEW

1) *Standard for Reviewing a Magistrate–Judge's Report and Recommendation*

▮ Pursuant to 28 U.S.C. §§ 636(b)(1)(B); Fed.R.Civ.P. 72(b); and

Local Rule 503; a District Court may refer dispositive motions to a United States Magistrate–Judge for a Report and Recommendation. *See Alamo Rodriguez v. Pfizer Pharmaceuticals, Inc.*, 286 F.Supp.2d 144, 146 (D.P.R.2003). The adversely affected party may "contest the Magistrate–Judge's report and recommendation by filing objections 'within ten days of being served' with a copy of the order." *United States of America v. Mercado Pagan*, 286 F.Supp.2d 231, 233 (D.P.R.2003) (quoting 28 U.S.C. §§ 636(b)(1).) If objections are timely filed, the District Judge shall "make a de novo determination of those portions of the report or specified findings or recommendation to which [an] objection is made." *Rivera de Leon v. Maxon Eng'g Servs.*, 283 F.Supp.2d 550, 555 (D.P.R.2003). The Court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate", however, if the affected party fails to timely file objections, the district court can assume that they have agreed to the magistrate's recommendation. *Alamo Rodriguez*, 286 F.Supp.2d at 146 (quoting *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir.1985)).

## DISCUSSION

1. *Legitimate Medical Purpose under the CSA*

Defendants aver in their objections to the Magistrate–Judge's Report and Recommendation that the Superseding Indictment should be dismissed because they acted in conformity with the Telemedicine Law, which allegedly allows physicians to provide prescriptions to persons outside the geographical jurisdiction of the Commonwealth of Puerto Rico. Contrary to Magistrate–Judge Camille L. Velez–Rive's recommendation, Defendants allege that the Telemedicine Law made it unnecessary for them to obtain separate licenses from

each of the States where the patients, who consulted them were located. According to Defendants, their conduct does not fall outside the scope of professional practice and constitutes a legitimate medical purpose. (Docket No. 258). The Court disagrees with Defendants' contentions.

 Title 21, United Section 841(a)(1) makes it "unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense . . . a controlled substance." Although medical professionals are generally permitted to dispense controlled substances, they "can be prosecuted under § 841 when their activities fall outside the usual course of professional practice." *United States v. Moore*, 423 U.S. 122, 124, 96 S.Ct. 335, 46 L.Ed.2d 333 (1975); *United States v. Fuchs*, 467 F.3d 889, 899 (5th Cir.2006). A medical practitioner has unlawfully distributed a controlled substance if she prescribes the substance either outside the usual course of medical practice or without a legitimate medical purpose. *United States v. Nelson*, 383 F.3d 1227, 1231–1232 (10th Cir.2004)(citing 21 C.F.R. § 1306.04(a)) and *Moore*, 423 U.S. at 124, 96 S.Ct. 335 ("Registered physicians can be prosecuted under § 841 when their activities fall outside the usual course of professional practice.").

 In *Moore* the Supreme Court stated that "physicians who departed from the usual course of medical practice were subject to the same penalties as street pushers" and that Congress had intended the CSA to be more, not less, strict. *Moore*, 423 U.S. at 139, 96 S.Ct. 335. Thus, a physician is authorized to dispense controlled substances only if he acts with a legitimate medical purpose and in the usual course of professional practice. *Nelson*, 383 F.3d at 1233. Conversely, a practitioner would be unauthorized to dispense a

controlled substance if he acts without a legitimate medical purpose or outside the usual course of professional practice. *Nelson,* 383 F.3d at 1233.

The Courts of Appeal have upheld convictions of physicians and pharmacists for distributing controlled substances over the Internet. *United States v. Fuchs,* 467 F.3d 889 (5th Cir.2006); *United States v. Nelson,* 383 F.3d 1227, 1232 (10th Cir. 2004). In prosecutions under § 841 involving distribution of drugs that have been prescribed by a licensed physician, the Government is required to prove three elements: (1) that the defendant distributed a controlled substances, (2) that he or she acted intentionally and (3) that he or she prescribed the drug without a legitimate medical purpose and outside the course of professional practice. *United States v. Feingold,* 454 F.3d 1001, 1006 (9th Cir.2006); *United States v. Johnson,* 71 F.3d 539, 542 (6th Cir.1995); *United States v. Tran Trong Cuong,* 18 F.3d 1132, 1137 (4th Cir.1994); *United States v. Varma,* 691 F.2d 460, 462 (10th Cir.1982).

It is important to recognize that the issue of whether a physician's conduct exceeds the bounds of professional medical practice, rendering him criminally liable under § 841, is one for determination by a jury. *Moore,* 423 U.S. at 142, 96 S.Ct. 335; *United States v. DeBoer,* 966 F.2d 1066, 1069 (6th Cir.1992); *United States v. Rosenberg,* 515 F.2d 190, 199 (9th Cir. 1975); *United States v. Hernandez,* 2007 WL 2915854, 2007 U.S. Dist. LEXIS 74373 (S.D.Fla.2007). As such, this is an element of the offense which the Government must prove to the jury, and is not properly the subject of a motion to dismiss. *Id.*

In essence, Defendants' objections are brought forth to achieve the dismissal of this case based on the theory that they acted with a legitimate medical purpose and in the usual course of professional practice. Defendants' arguments ignore the fact that the indictment in this case is not premised upon any statute or rule of law that specifically precludes the sale of prescription drugs over the Internet. It is, instead, premised upon a theory that the drugs were prescribed and distributed outside the bounds of professional medical practice. This is an element of the offense, which the Government must prove to the jury, and, therefore, is not properly the subject of a motion to dismiss. Consequently, Defendants' Motion to Dismiss must be denied.

### 2. *Defendant Lugo Torres's Fifth Amendment Claim*

In Defendant Lugo Torres's objection to the Report and Recommendation, she avers that the DEA's civil investigation and the incriminating statements that resulted from it were all in violation of the Self Incrimination Clause of the Fifth Amendment. Furthermore, Defendant disagrees with the Magistrate–Judge's conclusion that this case was conducted separately from the administrative proceedings. (Docket No. 259). This Court disagrees.

The Fifth Amendment privilege allows one not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings. *Chavez v. Martinez,* 538 U.S. 760, 770, 123 S.Ct. 1994, 155 L.Ed.2d 984 (2003)(citing *Lefkowitz v. Turley,* 414 U.S. 70, 77, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973)). The Supreme Court has created rules designed to safeguard the core constitutional right protected by the Self–Incrimination Clause. *Id.* Among these rules is an evidentiary privilege that protects witnesses from being forced to give incriminating testimony, even in non-

criminal cases, unless that testimony has been immunized from use and derivative use in a future criminal proceeding before it is compelled. *Kastigar v. United States,* 406 U.S. 441, 451, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).

■■■ Testimony obtained in civil suits, or before administrative or legislative committees, could [absent a grant of immunity] prove so incriminating that a person compelled to give such testimony might readily be convicted on the basis of those disclosures in a subsequent criminal proceeding. *Michigan v. Tucker,* 417 U.S. 433, 439, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974). The Supreme Court has held that the failure to assert the privilege while giving testimony in civil suits, or before administrative or legislative committees will forfeit the right to exclude the evidence in a subsequent "criminal case." *Chavez,* 538 U.S. at 771, 123 S.Ct. 1994; *Garner v. United States,* 424 U.S. 648, 650, 96 S.Ct. 1178, 47 L.Ed.2d 370(1976) (failure to claim privilege against self-incrimination before disclosing incriminating information on tax returns forfeited the right to exclude that information in a criminal prosecution); *United States v. Kordel,* 397 U.S. 1, 7, 90 S.Ct. 763, 25 L.Ed.2d 1(1970) (criminal defendant forfeited his right to assert Fifth Amendment privilege with regard to answers he gave to interrogatories in a prior civil proceeding). If the privilege could not be asserted in such situations, testimony given in those judicial proceedings would be deemed "voluntary." *Chavez,* 538 U.S. at 771, 123 S.Ct. 1994; *Rogers v. United States,* 340 U.S. 367, 371, 71 S.Ct. 438, 95 L.Ed. 344 (1951). Consequently, a party's failure at any time to assert the constitutional privilege against self-incrimination leaves him in no position to complain later that he was compelled to give testimony against himself. *United States v. Kordel,* 397 U.S. 1, 9, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970).

Defendant Lugo Torres failed to assert her constitutional privilege against self incrimination in the civil investigation conducted by the DEA. The Defendant did not claim said privilege when she offered her testimony to the DEA agents and when she voluntarily agreed to the Memorandum of Agreement. As such, the testimony given in the DEA civil proceeding is deemed voluntary.

In addition, after conducting a perusal of the record, this Court supports the Magistrate–Judges's conclusion that the civil investigation and the criminal investigation in this case were conducted separately. Thus, this Court holds that the DEA's civil investigation was not part of a coordinated effort between said agency and the Department of Justice to deprive her of the constitutional privilege against self-incrimination. Consequently, Defendant Lugos Torres's Motion to Dismiss must be denied.

### CONCLUSION

For the reasons stated above, the Court hereby **ADOPTS** the Magistrate–Judge's Report and Recommendation, (Docket No. 250), and modifies the basis for denying Defendants' Motions to Dismiss. (Docket Nos. 202, 204). Accordingly, the Court **DENIES** Defendants' Motions to Dismiss. (Docket Nos. 202, 204, 206).

IT IS SO ORDERED.

### REPORT AND RECOMMENDATION

CAMILLE L. VELEZ–RIVE, United States Magistrate Judge.

### INTRODUCTION

Defendant Alfred Valdivieso Rodríguez filed a Motion to Dismiss the Superseding Indictment which was referred by the

Court (**Docket Nos. 202, 203**). Co-defendants Juan A. Tosado–Polanco, Maileen Lugo Torres and Norberto J. Seda Olmo have joined the Motion to Dismiss (**Docket No. 204**). On July 26, 2007, the government filed its response (**Docket Nos. 217, 22 1**). Co-defendants Valdivieso and Lugo Torres requested and were granted time to oppose the government's response as to their Motion to Dismiss (**Docket Nos. 226, 229**). On August 23, 2007, Valdivieso filed his reply to response (**Docket No. 246**).

Co-defendant Lugo Torres has, in addition to joining Valdivieso's prior motion, submitted a Motion to Dismiss on grounds of prosecutorial misconduct (**Docket No. 206**).

We are now in a position to discuss both Motions to Dismiss referred by the Court.

## FACTUAL BACKGROUND

Above defendants were charged, in a forty one counts Superseding Indictment with violations of Title 21, *United States Code,* Sections 841(a)(1) and 846 (a conspiracy to distribute controlled substances and distribution of controlled substances); Title 18, *United States Code,* Section 1343 (wire fraud); Title 18, *United States Code,* Sections 1956(a)(1)(A)(I) and (h) (money laundering) and two forfeitures counts. The Superseding indictment charges a total of seven medical doctors, who were not licensed to practice medicine in any other jurisdiction but the Commonwealth of Puerto Rico, for having participated in a scheme to distribute drugs and dispense drugs through the internet to individuals with whom they lacked a doctor-patient relationship, in violation of federal regulations wherein prescriptions may only be issued for legitimate medical purposes.

Defendant Valdivieso has requested the dismissal of these federal charges claiming Section 841(a)(1), which sanctions distribution of controlled substances, conflicts with state law provisions allowing them as licensed physicians to offer Telemedicine [1]. Thus, said authorization from the state would not allow individuals in their position to ascertain their conduct being illegal. Defendant Valdivieso submits in his subsequent response to the government's reply he is not challenging Section 841 as unconstitutional, contrary to the government's discussion.[2] Rather, Valdivieso's contention is that state medical practice, as physicians were authorized to follow in the Commonwealth of Puerto Rico, deprived the federal government from criminalizing their conduct under the controlled substance act.

Co-defendant Lugo Torres has additionally submitted in her Motion to Dismiss, the government has sought the Indictment in the present case after she had been subject to parallel civil and criminal investigations by the Drug Enforcement Administration. By said administrative process, co-defendant Lugo Torres claims the government attempted to obtain an unfair advantage against her in its prospective criminal prosecution, concealing from her at the time she was object of a criminal investigation and luring her to make incriminating statements. Due to said conduct, it is alleged the government obtained incriminating admissions and caused her to prematurely reveal the nature of any criminal defense. On account of such alleged prosecutorial misconduct, co-defendant Lugo Torres avers the Superseding Indictment should be dismissed (**Docket No. 206**).

---

1. Puerto Rico Telemedicine Law, Law No. 227 of August 11, 1998, as amended by Law No. 415 of October 9, 2000.

2. Still, co-defendant Torres Lugo's Motion to Dismiss includes as grounds the unconstitutionality of this federal law provision.

## LEGAL DISCUSSION

Defendant Valdivieso and co-defendants Tosado–Polanco, Lugo Torres and Seda Olmo aver they held the corresponding licenses from the Drug Enforcement Agency ("DEA") to prescribe controlled substances. Additionally, the practice of Telemedicine as regulated in the Commonwealth of Puerto Rico by Act No. 227 of 1998, includes any test, diagnosis, treatment, operation or prescription for any physical and/or mental illness, ailment, pain, lesion, deformity or condition performed on a patient by a physician, surgeon or osteologist who practices as such, through advanced technologic telecommunication means in order to exchange information and provide the health services mentioned above in distant geographical areas. *See* Title 20, Laws of P.R. Ann. § 6001(b).

Thus, defendants argue that by said Telemedicine Act, the Puerto Rico State Board of Medical Examiners has authorized them to practice telemedicine and, therefore, allowed them to prescribe controlled substances to their internet customers.

### A. Puerto Rico Telemedicine Law.

The federal Superseding Indictment charges defendants, while working with various internet facilitation centers, with providing prescription services of controlled substances to numerous individuals who reside in states across the continental United States, without having a patient-doctor relationship, no mental or physical examination or using appropriate diagnos-

tic or laboratory testing to monitor medication response, solely after filling out an online questionnaire and providing payment.[3]

Defendants submit the Puerto Rico Telemedicine Law authorizes their actions and would not have placed them on notice that acting in conformity thereof would knowingly infringe federal controlled substance laws.

A perusal of the Commonwealth of Puerto Rico Act which governs medicine services shows the Medical Examining Board licenses and authorizes the medical practice of physicians, surgeons and osteologist, among others, "in the Commonwealth of Puerto Rico." Title 20, L.P.R.A. Sec. 34. The state provisions regarding the practice of telemedicine reveals in its statement of motives as a primary function of the Commonwealth of Puerto Rico to monitor the rendering and offering to "residents of the island [Puerto Rico]" health services of outmost quality and without any type of barriers that would hinder access to such services. The law has the purpose to protect the best interest of the "patients in Puerto Rico" by establishing controls as to the form and manner telemedicine may be carried out "in the Commonwealth of Puerto Rico". Title 20, L.P.R.A., Sec. 6001.

As illustrative of the internet medical practices *vis a vis* regular face to face practice, when a Court instructs a jury as to conviction or acquittal of a medical practitioner for a federal controlled substance violation,[4] it will indicate that to convict the

---

**3.** To convict a practitioner registered to distribute controlled substances of violating § 841(a)(1), the government must show that he prescribed controlled substances outside "the course of professional practice". *See United States v. Moore,* 423 U.S. 122, 141, 96 S.Ct. 335 (1975); *United States v. Bek,* 493 F.3d 790 (7th Cir.2007); *United States v.*

*Green,* 511 F.2d 1062, 1067 (7th Cir.1975); *see also United States v. McIver,* 470 F.3d 550, 564 (4th Cir.2006).

**4.** The Controlled Substance Act defines "practitioner" as a "physician ... licensed, registered, or otherwise permitted by the United States or the jurisdiction in which he prac-

jury must determine whether the defendant's conduct was within the bounds of professional medical practice and consider also any testimony as to the norms of professional practice. Practices inconsistent with legitimate medical care may include uniform, superficial and careless medical examinations, exceedingly poor record-keeping, disregard of signs of drug abuse, prescribing multiple medications having the same effect or drugs that are dangerous when taken in combination, among others. These situations may be assessed from the existence or non-existence of appropriate patient's medical record and/or adequate record of prescribed medications. The prescribing of a controlled substance by a physician is "authorized only when the physicians" act with a "legitimate medical purpose and in the usual course of professional practice." *See United States v. Nelson,* 383 F.3d 1227, 1233 (10th Cir.2004) (*citing* 21 C.F.R. § 1306.04(a)); *see also United States v. Moore,* 423 U.S. 122, 96 S.Ct. 335, 46 L.Ed.2d 333.

By definition, telemedicine is the use of medical information exchanged from one site to another via electronic communications to improve patients' health status. Closely associated with telemedicine is the term "telehealth," which is often used to encompass a broader definition of remote healthcare which does not always involve clinical services. Telemedicine is not a separate medical specialty.[5] *See* American Telemedicine Association's webpage;

http://www.atmeda.org/news/definition.html.

When medically under served patients and physicians are located in separate states the issue of practitioner licensure arises. Licensure laws which regulate interstate telemedicine practice vary from state to state. States and in the present case, the Commonwealth of Puerto Rico, have restrictive licensure for telemedicine, while other jurisdictions may have reciprocal license for such practice. Reciprocity, as mutual exchange of privileges, permits one state to recognize a license in good standing that a practitioner holds in another jurisdiction. In the three states (Alabama, California and Oregon) which have adopted this model, the licensee is explicitly not permitted to practice medicine in-person—only interstate telemedicine care is allowed. *See* Telemedicine Information Exchange; http://tie.telemed.org. The Commonwealth of Puerto Rico lacks reciprocity in this aspect, for which defendants cannot conclude they are authorized to practice medicine *per se* or telemedicine for this purpose in multiple jurisdictions.

It is well recognized that at this stage, for telemedicine and/or telehealth care to fully be implemented, licensure and credentialing issues must be resolved.[6] Currently, before practicing in any state, physicians are required to be licensed in that state (Charles, 2000). *See* Veronica Thurmond RN, MS, *Telehealth in the Year 2010;* veronica.thurmond@us.army.mi;

---

tices ... to distribute, dispense, [or] administer ... a controlled substance in the course of professional practice." *Id.* Section 802–(21).

**5.** Even the amendment to the Puerto Rico Telemedicine Law was enacted to clarify there was no need for an additional medical license as construed as to Law No. 227 of August 11, 1998. See Law No. 413 of October 9, 2000.

**6.** The best philosophy and approach to telemedicine is that the same standards of care and protocols applicable to more traditional forms of medicine exist with telemedicine. The physician-patient relationship and interaction are the same. The process should be the same as if the patient were in the room with the doctor. You also hear terms like telehealth and e-health. See http://www.ttuhsc.edu/telemedicine/FAQS.html.

http://www.hhdev.psu.edu/nurs/ojni/dm/52/article3.htm.

There are few laws specific to telemedicine. Laws and rules pertaining to the practice of medicine will also apply to telemedicine. The key is to not let the technology alter the manner in which physicians practice. The issue of licensing varies from state to state. Most states' policy is that the practice of medicine transpires where the patient is located. Therefore, if a patient is seen in another state, the physician should be licensed to practice medicine in that state. See http://www.ttuhsc.edu/telemedicine/FAQS.html.

Regardless of the telemedicine system under which the physician is operating, the principles of medical ethics which are globally binding upon the medical profession must never be compromised. Physicians practicing telemedicine must be authorized to practice medicine in the country or state in which they are located, and should be competent in the field of medicine they are practicing. When practicing telemedicine directly with a patient located in another country or state, the physician must be authorized to practice in that state or country, or it should be an internationally approved service. *See* policies of the World Medical Association Statement on Accountability, Responsibilities and Ethical Guidelines in the Practice of Telemedicine, Adopted by the 51st World Medical

Assembly Tel Aviv, Israel, October 1999 and rescinded at the WMA General Assembly, Pilanesberg, South Africa, 2006; PREAMBLE http://www.wma.net/e/policy/a7.htm.[7]

The above non-legal information is merely illustrative to show numerous and easily available internet resources that may assist practitioners, such as herein defendants, when they encounter good-faith questions and doubts as to the scope of their authority to practice telemedicine. Defendants herein have taken the easy road of requesting dismissal supported by a subjective interpretation of their authority under local state law to sustain their practice and further claiming their interpretation of state law supports lack of knowledge of any criminal intent when their actions collide with federal laws and regulations.[8]

 Defendants' averment they could not have known their conduct to be illegal because of their interpretation of what the Telemedicine Law of Puerto Rico authorizes them to do, is an attempt to navigate blindfolded through their wanton ignorance of the law.[9]

In view of the foregoing, it is recommended that defendants' request for dismissal on above discussed grounds be DENIED.

## B. Prosecutorial Misconduct.

Co-defendant Lugo Torres further submits that as far back as September 2005,

---

**7.** The American Telemedicine Association is working in the development of ATA national and regional governors and state legislative associations regarding mutual recognition of medical licenses.

**8.** Although medical professionals who are registered with the Attorney General are generally permitted to dispense controlled substances, they can be prosecuted under the Controlled Substances Act when their activities fall outside the usual course of professional practice. Comprehensive Drug Abuse Pre-vention and Control Act of 1970, § 401, 21 U.S.C.A. § 841. *United States v. Fuchs,* 467 F.3d 889 (5th Cir.2006).

**9.** Not discussed by defendant is that the "knowingly" act to be discussed applies to the dispensation or distribution of controlled substance not to their "knowingly" practice of the medical profession as not covering their actions. *See United States v. Celio,* 2007 WL 1241635 (10th Cir.2007).

the DEA served her with an Order to Show Cause and Immediate Suspension of Registration in regard to investigation of another co-defendant who had been identified through wire transfers to have received monies from co-defendant Valdivieso. She was extensively interviewed by two DEA agents. The summary suspension of her registration license was predicated on alleged prescriptions authorized over the internet regarding patients located in several states in the United States. Finally, and while represented by counsel, Lugo Torres executed a Memorandum of Agreement by which a full and final settlement was reached by the parties without a hearing and need of further litigation. These administrative proceedings were terminated around September of 2006.

Lugo Torres now claims that by that time, she had already incriminated herself in interviews with DEA agents and had tacitly admitted to the DEA's allegations of illegal practice of medicine based on the internet prescriptions. On account of these administrative proceedings, Lugo Torres states she surrendered to the government any possible defense she might have in future criminal proceedings, had disclosed her defenses and "might have" relied on the good faith of the government [10] in that consenting to the two-year suspension and complying with the rest of the terms of the Memorandum Agreement would put an end to the matter. *See* Motion to Dismiss, p. 7. (**Docket No. 206**). However, the government had already commenced criminal investigation of her and other co-defendants for which defendant Lugo Torres now claims the government was simply using the administrative

proceeding as an additional discovery tool and abused the same. Lugo Torres now seeks dismissal of the indictment on account of said alleged prosecutorial misconduct.

The government's response to co-defendants' Motion to Dismiss did not address Lugo Torres' contention of prosecutorial misconduct (**Docket No. 217**). Rather, the government filed a separate response with specific reference to the administrative process followed and the alleged misconduct claimed by defendant if true, to be considered harmless (**Docket No. 223**). The government admits the criminal investigation in this case began around December 30, 2003, resulting from an administrative inspection conducted by the DEA under the agency's regulatory power to inspect pharmacies periodically. The allegations were that physicians within Puerto Rico were illegally prescribing controlled substances over the internet to persons outside Puerto Rico, that is, the continental United States. The government submits at no time any information regarding the criminal investigation was provided to the Office of the Chief Counsel of the DEA nor that *vice versa*, the information from the DEA Chief Counsel Office as to the criminal investigation was received or used in regard to the suspension of Lugo Torres' DEA registration. The government further submits codefendant Torres Lugo has not showed any evidence that information concerning the criminal investigation was shared with the administrative investigators.

The government also states as to defendant Lugo Torres' claims that the Memo-

---

**10.** The potential use of the verb in this case may be construed as a mood of probability, indicating that the action most likely, but not certainly, occurs. See also:
1. Used to indicate a possibility or probability that is weaker than *may: We might dis-*

*cover a pot of gold at the end of the rainbow.* [Middle English, from Old English meahte, mihte, first and third person sing. past tense of *magan,* to be able].

randum of Agreement would indicate her First Amendment rights to due process were violated, this agreement does not show any clause therein prohibiting the prosecution of defendant on criminal charges but was entered into for the sole purpose of ensuring that Lugo Torres could reapply for her DEA license after a twenty-four (24) months period.[11]

The government submits discovery provided to defendant and the government's designation of evidence would show the criminal investigation in this case was conducted separately employing investigative techniques commonly used in criminal investigations and defendant Lugo Torres has not shown that any evidence was obtained as a result of the administrative proceedings. Thus, the government's contention is that Lugo Torres has made no showing of actual prejudice.

■■■ A perusal of the record shows co-defendant Lugo Torres' motion for dismissal on grounds of prosecutorial misconduct does not impeach the Grand Jury proceedings but the administrative events that took place prior to the indictment. There is, thus, no parallel *Kastigar* claim made by this defendant.[12]

In fact, the case law provided by defendant Lugo Torres as to *United States v. Kordel*, 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970) fails to support the claim that a Fifth Amendment violation would require dismissal. In *Kordel*, the Supreme Court held that the answer to the government in civil proceedings where the defendant could have invoked his Fifth Amend-

ment but failed to do so, could not assert being forced to · give testimony against himself, even if information supplied in answers provided evidence or led useful to government in a criminal prosecution.

■■■ It has long been recognized that "[t]he Constitution does not forbid the asking of criminative questions". *United States v. Monia,* 317 U.S. 424, 433, 63 S.Ct., 409, 413, 87 L.Ed. 376 (1943). Neither does the incriminating nature of a question, by itself, excuses a timely assertion of the privilege. *See e.g., United States v. Mandujano,* 425 U.S. 564, 574–575, 96 S.Ct. 1768, 1775–1776, 48 L.Ed.2d 212 (1976). If a witness-even one under a general compulsion to testify-answers a question that both he and the government should reasonably expect to incriminate him/her, the Court need ask only whether the particular disclosure was "compelled" within the meaning of the Fifth Amendment. *Minnesota v. Murphy,* 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984).

■■■ As the Court of Appeals for the First Circuit has affirmed, it is well established that "[a]n indictment returned by a legally constituted and unbiased grand jury, ... if valid on its face, is enough to call for trial of the charge on the merits". *Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 409, 100 L.Ed. 397 (1956). *See Lawn v. United States,* 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958). The Supreme Court has also held that an indictment returned by a legally constituted an unbiased grand jury "is not

---

11. Neither defendant Lugo Torres nor the government in fact included copy of the Memorandum of Agreement with the electronic filing of the motion to dismiss or the subsequent government's response (Docket Nos. 206, 223).

12. Defense which may be raised "when agents and officers of the United States ...

obtained, directly and indirectly and as a result of immunized testimony, evidence which resulted in the indictment by the grand jury." *See Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212; *Murphy v. Waterfront Commission of New York Harbor,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964).

subject to challenge on the grounds that the grand jury acted on the basis of inadequate or incompetent evidence". *United States v. Calandra,* 414 U.S. 338, 363, 94 S.Ct. 613, 627, 38 L.Ed.2d 561 (1974). *See United States v. Rivera–Santiago,* 872 F.2d 1073 (1st Cir.1989).

 Defendant Lugo Torres also submits in her Motion to Dismiss case law to support her claim, including *United States v. Smith* [13] and *United States v. Grunewald* [14]. Thereunder, as well as in *United States v. Tweel* [15] the Courts discussed IRS regulations did not allow to proceed with a civil audit once agents reached during the audits the point when auditors develop a firm indication of fraud. Still, the burden is on the moving party to establish the agents resorted to deception during an administrative audit/investigation, since Courts give weight to the internal regulations and to the Internal Revenue System which being based on good faith of taxpayers is consonant with taxpayers' expectation of good faith from the government.

 These cases cited by defendant provide the government's conduct to justify dismissal of the charges on prosecutorial misconduct and due process needs must be grossly shocking and outrageous as to violate a universal sense of fairness, making the agents' conduct evidently repugnant to the American system of dispensing justice. The above is hardly co-defendant Lugo Torres' situation, who was represented by counsel during the administrative process at issue and who has not established she was deceived by the agents in signing the purported agreement.

Co-defendant Lugo Torres has thus failed to meet the burden of establishing prosecutorial misconduct and additionally also failed to establish she has suffered a harm as a result thereof.

Thus, it is recommended that co-defendant Lugo Torres' claims for dismissal of the Superseding Indictment for alleged government's misconduct be DENIED.

## C. Constitutionality of Section 851.

Co-defendant Valdivieso in his response indicated he was not raising a constitutional claim. However, co-defendant Lugo Torres, when joining said motion, made reference to *Gonzales v. Oregon* [16], wherein the interpretation of the Attorney General of the controlled substance act criminalizing defendants' conduct, one that was sanctioned by state regulation as within the proper practice of medicine, was held unconstitutional.[17]

 Defendant submits the government's position that seemly requires face-to-face contact with customers and their physicians when dispensing controlled substances through an internet business, although authorized by telemedicine state law to be otherwise, is but an attempt of the Attorney General to define the stan-

---

**13.** 924 F.2d 889, 897 (9th Cir.1991) (dealing with the government using a civil investigation by SEC personnel to develop a criminal investigation).

**14.** 987 F.2d 531, 534 (8th Cir.1993). Grunewald dealt with an Internal Revenue investigation of defendant's tax practices.

**15.** 550 F.2d 297 (5th Cir.1977).

**16.** 546 U.S. 243, 126 S.Ct. 904, 163 L.Ed.2d 748 (2006).

**17.** Attorney General's directive declaring that physician assisted suicide violated the Controlled Substances Act ("CSA") exercised control over an area of law traditionally reserved for state authority without unmistakably clear Congressional authorization, was found in violation of the "clear statement" rule. Comprehensive Drug Abuse Prevention and Control Act of 1970, § 101 et seq., 21 U.S.C.A. § 801 *et seq.*

dards of medical practice and to regulate the practice of medicine by criminalizing defendants' actions as a controlled substance violation. By finding illegal the prescription of drugs over the internet, as being outside the scope of professional practice and not for a legitimate medical purposes, as contained in the overt acts of the instant Superseding Indictment, co-defendants herein consider the government is federally punishing actions state law allow within the practice of their medical profession.

Nowhere in the Commonwealth of Puerto Rico Telemedicine Act are herein defendants authorized to provide medical services outside Puerto Rico to patients/customers who are not residents of Puerto Rico since said state law is not a multi-district accreditation for physicians outside the boundaries of Puerto Rico on patients who are not residents herein and/or as to whom, except for their internet communication, there is no prior physician-patient relationship. Thus, the government's response is appropriate in that defendants have never been licensed to practice medicine in the states where the internet customers were located nor where the pharmacy where the controlled substances were dispensed. Although we have discussed above the scope of the Telemedicine Act not impinging or modifying the accepted legitimate medical purposes, defendants' arguments now rest on the unconstitutionality.

██ Furthermore, federal law is not defining what the appropriate practice of medical profession is, but rather, reference to the particulars of applicable state defini-

tion, authorization and licensing, together with the recognized standards prevail. *See United States v. Katz,* 445 F.3d 1023, 1030 (8th Cir.2006) (noting that "the material issue [was] whether defendant, a medical doctor, wrote ... prescriptions outside the usual course of medical practice and without a legitimate medical purpose"). *See also United States v. Hurwitz,* 459 F.3d 463, 479 (4th Cir.2006) ("We believe that the inquiry must be an objective one, a conclusion that has been reached by every court to specifically consider the question."); *United States v. Feingold,* 454 F.3d 1001, 1011–12 (9th Cir.2006) ("[I]t is appropriate in cases such as this for the jury to consider the practitioner's behavior against the benchmark of acceptable and accepted medical practice. Just how that benchmark is expressed to the jury-here, the district court defined that benchmark in terms of the 'standard of medical practice generally recognized and accepted in the country'-is a matter within the district court's discretion.") (footnote and citation omitted); *United States v. Vamos,* 797 F.2d 1146, 1151 (2d Cir.1986) ("The term 'professional practice' refers to generally accepted medical practice; a practitioner is not free deliberately to disregard prevailing standards of treatment. In short, the doctor must act in the good faith belief that his distribution of the controlled substance is for a legitimate medical purpose and in accordance with the usual course of generally accepted medical practice.") *(citing United States v. Norris,* 780 F.2d 1207, 1209 (5th Cir.1986)).[18]

Defendants' submission the Controlled Substance Act should be deemed unconstitutional for criminalizing their authorized

---

**18.** Only after assessing the standards to which medical professionals generally hold themselves is it possible to evaluate whether a practitioner's conduct in prescribing medication has deviated so far from the usual course of professional practice that his ac-

tions become criminal distribution of controlled substances. Comprehensive Drug Abuse Prevention and Control Act of 1970, § 401(a). *United States v. Feingold,* 454 F.3d 1001 (9th Cir.2006).

state action as medical practitioners is not supported by a mere rational reading of the statute nor by their subjective interpretation of what state provisions authorize them to do *vis a vis* their charged actions. At this juncture, it is recommended that defendants' request for dismissal because of unconstitutionality of the Controlled Substance Act under the rationale of *González v. Oregon* be DENIED.

## CONCLUSION

In view of the foregoing, it is recommended consonant with above, that the Motion to Dismiss the Superseding Indictment be **DENIED (Docket Nos. 202, 221, 204)**. It is further recommended that the request for dismissal because of prosecutorial misconduct and unconstitutionality of Section 851 be **DENIED (Docket No. 206)**.

IT IS SO RECOMMENDED.

The parties have ten (10) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this order. *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–151 (1st Cir.1994); *United States v. Valencia–Copete,* 792 F.2d 4 (1st Cir.1986). *See Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 991 (1st Cir.1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").