**UNITED STATES of America,**

v.

**Antonio QUINONES, also known as "Tony," Alfred Valdivieso, Michael Depinillos, Herman Quinones and Charlie Lopez, Defendants.**

No.  06–CR–845(S–2)(FB).

United States District Court,
E.D. New York.

Feb. 19, 2008.

---

Benton J. Campbell, Esq., United States Attorney, Eastern District of New York, by Jeffrey Rabkin, Esq., Assistant United States Attorney, Brooklyn, NY, for United States.

Stephen H. Rosen, Esq., Miami, FL, for Defendant Antonio Quinones.

Jerome J. Froelich, Jr., Esq., Atlanta, GA, for Defendant Alfred Valdivieso.

Edward R. Shohat, Esq., Sharon Lee Kegerreis, Esq., Miami, FL, for Defendant Michael Depinillos.

Frank Anthony Doddato, Esq., Garden City, NY, for Defendant Herman Quinones.

Ken T. Lange, Esq., North Miami, FL, for Defendant Charlie Lopez.

## *MEMORANDUM*

BLOCK, Senior District Judge.

Defendants are charged in a Superseding Indictment with (1) conspiracy to distribute, and to possess with intent to distribute, controlled substances, in violation of 21 U.S.C. § 846; (2) distributing, and possessing with intent to distribute, controlled substances, in violation of 21 U.S.C. § 841; and (3) money laundering conspiracy, in violation of 18 U.S.C. § 1956. All defendants, except Alfred Valdivieso, have moved to dismiss the Superseding Indictment on the grounds (1) that the acts they are alleged to have committed are not proscribed by the federal drug laws; and, alternatively, (2) that those laws, as applied to them, are unconstitutionally vague.

Oral argument was held on January 18, 2008. At the conclusion of the argument, the Court denied the motions and stated that a full explanation would be forthcoming in a written decision.

### I

This prosecution is, by no means, a typical drug case. The government does not allege that the defendants distributed and conspired to distribute controlled substances through clandestine deals in a dark alley; rather, it alleges that defendants Antonio Quinones, Herman Quinones, Michael Depinillos and Charlie Lopez ("the

moving defendants") created and operated several websites, and in so doing, conspired with and aided and abetted medical professionals such as defendant Alfred Valdivieso, a physician licensed in Puerto Rico, to distribute controlled substances outside the usual course of professional practice. The Superseding Indictment describes the details of the operation as follows:

- The websites "permitted customers to provide their credit card information and required them to complete brief on-line questionnaires before ordering specific drugs, including the Controlled Substances. Customers were not required to submit a valid form of identification or a valid prescription for the Controlled Substances they ordered." Superseding Indictment ¶ 21.

- The on-line questionnaires were sent to doctors such as Valdivieso. These doctors "purported to review the on-line questionnaires and then wrote and authorized a prescription for the Controlled Substances requested by the customers." *Id.* ¶ 22. Although the online questionnaires included a brief medical history, "at no time during the questionnaire review process did defendant ALFRED VALDIVIESO physically examine and obtain a complete medical history from the customers. Nor did VALDIVIESO make an effort to confirm the accuracy of the information provided by the customers in the on-line questionnaires. Rather, after purportedly reviewing only the customers' on-line questionnaires, defendant ALFRED VALDIVIESO wrote and authorized prescriptions for the Controlled Substances requested by the customers." *Id.* ¶ 23.

- Various pharmacies throughout the United States (including the Eastern District of New York) accessed the websites, filled the orders once prescriptions were issued, and shipped them to customers using Federal Express accounts held by Antonio Quinones, Herman Quinones and Michael Depinillos. *See id.* ¶¶ 24, 26.

- Each completed order was charged to the credit card information the customer had provided. Proceeds from the sales were wiretransferred to bank accounts controlled by Antonio Quinones, Herman Quinones and Michael Depinillos. *See id.* ¶ 25.

- For each order, the website operators paid a fee to All Service Consultants, Inc. All Service Consultants, in turn, paid Valdivieso a fee for each order he reviewed. *See id.* ¶ 27.

At this stage, these allegations must be taken as true because Federal Rule of Criminal Procedure 12(2) precludes pretrial motions that would require "a trial of the general issue." *See also United States v. Alfonso,* 143 F.3d 772, 777 (2d Cir.1998) ("[T]he sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment."); *United States v. Tomero,* 2007 WL 1522615, at *1 (S.D.N.Y. May 22, 2007) ("There is no summary judgment in criminal cases.").

## II

21 U.S.C. § 841(a)(1) provides that "it shall be unlawful for any person knowingly or intentionally [to] distribute, ... or possess with intent to ... distribute, ... a controlled substance." 21 U.S.C. § 846 makes it a crime to conspire to violate § 841. 18 U.S.C. § 1956 makes it unlawful to conspire to launder the proceeds of "specified unlawful activity," which includes illegal distribution of controlled substances.

The federal drug laws contain several exceptions to the broad prohibition on the

distribution of controlled substances. The exception relevant here is found in 21 U.S.C. § 822(b), which empowers the Attorney General to implement a registration process to authorize medical professionals, known as "registrants," to dispense controlled substances:

> Persons registered by the Attorney General under this subchapter to ... distribute ... controlled substances ... are authorized to possess [and] distribute ... such substances or chemicals (including any such activity in the conduct of research) to the extent authorized by their registration and in conformity with the other provisions of this subchapter.

The Superseding Indictment does not allege which of the defendants, if any, are registrants; nevertheless, based on the parties' submissions, it is safe to assume that Valdivieso—a licensed physician—is, but that the moving defendants are not.

In 1971, the Attorney General promulgated a regulation providing that a controlled substance may be prescribed only "for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." 21 C.F.R. § 1306.04. In *United States v. Moore*, 423 U.S. 122, 96 S.Ct. 335, 46 L.Ed.2d 333 (1975), the Supreme Court held that the statutory and regulatory scheme amounted to "a qualified authorization of certain activities, not a blanket authorization of all acts by certain persons." *Id.* at 131, 96 S.Ct. 335. Thus, the Court held that, despite registration, "physicians can be prosecuted under § 841 *when their activities fall outside the usual course of professional practice.*" *Id.* at 124, 96 S.Ct. 335 (emphasis added). Presumably in recognition of *Moore*, Valdivieso does not move to dismiss the indictment.

The moving defendants argue (A) that their activities are not proscribed by § 841, and (B) even if they were, the phrase "usual course of professional practice" is unconstitutionally vague because, as applied to them, it does not put a reasonable person on notice of what conduct is proscribed. The Court addresses these arguments in turn.[1]

## A. Legality of Defendants' Conduct

Since *Moore*, the Second Circuit and other courts have consistently held that non-registrants may be prosecuted under § 841 for conspiring with a registrant, or aiding and abetting a registrant, to distribute controlled substances outside the usual course of professional practice. *See United States v. Vamos*, 797 F.2d 1146 (2d Cir.1986) (upholding conviction of nurse/office manager under conspiracy and aiding-and-abetting theories); *United States v. Johnson*, 831 F.2d 124 (6th Cir. 1987) (upholding conviction of non-physician clinic operator under aiding-and-abetting theory); *United States v. Hicks*, 529

---

**1.** Defendants initially raised a third argument: that the original indictment was defective because it did not allege that the drug distribution was outside the usual scope of professional practice, which they characterized as an essential element of the crime defined by § 841. The Second Circuit has not spoken on that issue, and the other circuit courts are divided. *Compare, e.g., United States v. Steele*, 147 F.3d 1316, 1317 (11th Cir.1998) ("[A]n indictment of a practitioner for unlawfully dispensing drugs need not aver that it was done outside the course of professional practice."), *with, e.g., United States v. King*, 587 F.2d 956, 963 (9th Cir.1978) ("[L]ack of authorization to distribute or dispense controlled substances is an element of the crime."). The Court need not address the issue because it has become moot: the Superseding Indictment specifically alleges that the defendants acted "outside the scope of professional practice and not for a legitimate medical purpose." Superseding Indictment ¶ 29.

F.2d 841 (5th Cir.1976) (upholding conviction of security guard on conspiracy theory). Sidestepping these cases, the moving defendants argue that the distribution of controlled substances through so-called Internet pharmacies is not currently illegal.

■ That the moving defendants allegedly carried out their activities through the Internet is of no consequence. Two circuit courts have approved the application of the federal drug laws to the operation of Internet pharmacies. *See United States v. Nelson,* 383 F.3d 1227 (10th Cir. 2004) (affirming conviction of physician issuing prescriptions for Internet pharmacy); *United States v. Fuchs,* 467 F.3d 889 (5th Cir.2006) (affirming conviction of pharmacist who had set up Internet pharmacy). Although *Nelson* and *Fuchs* dealt with registrants (a physician and a pharmacist, respectively), the Court sees no reason why the logic of *Vamos, Johnson* and *Hicks*—that non-registrants can be prosecuted for conspiring with or aiding and abetting registrants—would not apply regardless of the means used to carry out the distribution: If the means are within the usual scope of professional practice, they are legal; if they are outside that scope, they are illegal.

The moving defendants argue that the prosecution is an attempt by the government to establish a *per se* rule that dispensing controlled substances without a face-to-face meeting between patient and doctor is outside the usual scope of professional practice; they argue that this attempt runs afoul of the Supreme Court's decision in *Gonzales v. Oregon,* 546 U.S. 243, 126 S.Ct. 904, 163 L.Ed.2d 748 (2006).

At issue in *Gonzales* was a 2001 interpretative rule promulgated by the Attorney General; the rule declared "that assisting suicide is not a 'legitimate medical purpose' within the meaning of 21 CFR 1306.04 (2001), and that prescribing, dispensing, or administering federally controlled substances to assist suicide violates the Controlled Substances Act." 66 Fed. Reg. 56607, 56608. The State of Oregon, which had passed a law authorizing physician-assisted suicide, sought to enjoin enforcement of the rule. The Supreme Court held that the federal drug laws, as interpreted in *Moore,* do "not authorize the Attorney General to bar dispensing controlled substances for assisted suicide in the face of a state medical regime permitting such conduct." *Id.* at 925.

The moving defendants take *Gonzales* to mean that the Attorney General does not have the authority to decide what medical practices constitute a violation of the federal drug laws. While that is certainly a fair reading of *Gonzales,* it is a gross mischaracterization of the present prosecution. The government is not trying to establish a *per se* rule that Internet prescriptions are invalid; rather, it is prosecuting the defendants under the rule established in *Moore* that prescribing drugs outside the usual scope of professional practice is illegal. The government is making no attempt, as in *Gonzales,* to unilaterally define which practices fall outside that scope; rather, it intends to leave that question where it has been for over 30 years—with the jury.[2]

---

2. In a related vein, in a supplement to their motions to dismiss, the moving defendants argue that the Superseding Indictment improperly attempts to define "usual scope of professional practice" by reference to the Professional Ethics Canons of the Medical Profession of Puerto Rico, the New York State Department of Health's regulations governing the issuance of prescriptions, and the positions of the American Medical Association and Federation of State Medical Boards. That the government has set forth in detail how it intends to prove to a jury that the moving defendants conspired with and aided

Drawing on *Gonzales,* and in particular, the Supreme Court's federalism-based observation that "[t]he structure and operation of the [federal drug laws] presume and rely upon a functioning medical profession regulated under the States' police powers," 126 S.Ct. at 923, the moving defendants argue that the law of Puerto Rico (where Valdivieso was licensed) authorizes "telemedicine." Specifically, they rely on Puerto Rico's Telemedicine Act, which authorizes physicians to provide medical services—including prescriptions—via "advanced technologic telecommunication means" to patients in "distant geographical areas." 20 L.P.R.A. § 6001.

At oral argument, the government cited *United States v. Valdivieso Rodriguez,* 2007 WL 3125179 (D.P.R. Oct.24, 2007), for the proposition that the Telemedicine Act does not authorize doctors in Puerto Rico to practice "telemedicine" nationwide. In *Valdivieso Rodriguez,* Magistrate Judge Camille L. Velez–Rive of the District of Puerto Rico addressed a motion to dismiss a prosecution against seven Puerto Rican doctors (including Valdivieso) for prescribing controlled substances over the Internet outside the usual scope of professional practice; as here, the defendants argued that the Telemedicine Act authorized their actions.

The magistrate judge concluded that the act authorized the practice of telemedicine only within Puerto Rico. *See id.* at *7–*8 ("[D]efendants cannot conclude they are authorized to practice medicine *per se* or telemedicine for this purpose [i.e., prescribing controlled substances over the Internet] in multiple jurisdictions. . . . [I]f a patient is seen in another state, the physician should be licensed to practice medi-

cine in that state."). The district court, however, neither adopted nor rejected the magistrate judge's conclusion, instead holding that, regardless of the Telemedicine Act, "the issue of whether a physician's conduct exceeds the bounds of professional medical practice ... is one for determination by a jury," and, therefore, "not properly the subject of a motion to dismiss." *Id.* at *3.

■ The Court agrees that whether conduct is outside the bounds of professional practice is a jury question; however, it does not follow that the jury should decide that issue informed by an erroneous interpretation of the relevant legal standards. Thus, unlike the district court in *Valdivieso Rodriguez,* the Court addresses whether the Telemedicine Act has any relevance to this prosecution.

The moving defendants contend that the act means that doctors in Puerto Rico may prescribe medication for anyone, anywhere; however, the more reasonable interpretation is that it was intended to afford medical services to those living in remote areas of Puerto Rico not well-served by traditional medical practices. The Court agrees with the magistrate judge in *Valdivieso Rodriguez* that the act was not intended to authorize doctors in Puerto Rico to prescribe medication to anyone in the United States, thereby stripping every state in the union of its power to regulate the health and safety of its citizens. *Cf. Goya de Puerto Rico v. Rowland Coffee,* 206 F.Supp.2d 211, 215 n. 4 (D.P.R.2002) ("It is well settled that Puerto Rico's laws cannot be interpreted to have an extraterritorial effect.").

and abetted registrants to distribute controlled substances outside the usual scope of professional practice does not mean that it is attempting to unilaterally define the phrase.

At worst, the challenged allegations amount to surplusage, which, as the Court explained at oral argument, will not be read to or given to the jury.

Moreover, whatever its territorial reach, the Telemedicine Act requires physicians to obtain "the *oral* and written informed consent of the patient" before performing telemedicine services. 20 L.P.R.A. § 6006 (emphasis added). Even assuming that the information provided by customers of the moving defendants' websites constitutes "written informed consent," the government alleges that no doctor ever spoke to any customer.

Finally, the moving defendants point out that Congress has proposed—but not passed—legislation that would specifically criminalize dispensing prescriptions over the Internet where the prescriber has not conducted at least one face-to-face medical evaluation of the "patient." *See* S. 980, 110th Cong. § 2(d) (2007). That Congress has considered clearer legislation, however, does not mean that existing laws do not apply:

> [S]tatutes are construed by the courts with reference to the circumstances existing at the time of the passage. The interpretation placed upon an existing statute by a subsequent group of Congressmen who are promoting legislation and who are unsuccessful has no persuasive significance. . . . Logically, several equally tenable inferences could be drawn from the failure of the Congress to adopt an amendment in the light of the interpretation placed upon the existing law by some of its members, including the inference that the existing legislation already incorporated the offered change.

*United States v. Wise,* 370 U.S. 405, 411, 82 S.Ct. 1354, 8 L.Ed.2d 590 (1962). Here, it may well be that Congress intended the proposed legislation to proscribe, by a clear-cut, *per se* rule, the distribution of controlled substances over the Internet without a face-to-face meeting between patient and doctor; it does not follow that

the same conduct is not within the embrace of the current prohibition of distribution outside the usual scope of professional practice.

In sum, the moving defendants are not being prosecuted simply for selling controlled substances over the Internet; rather, they are being prosecuted for conspiring with, and aiding and abetting, medical professionals like Valdivieso to distribute controlled substances outside the usual course of professional practice. As *Moore* and its progeny make clear, such a prosecution is proper under existing federal drug laws.

**B. Vagueness**

■ "[A]s a matter of due process, a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute, or is so indefinite that it encourages arbitrary and erratic arrests and convictions, is void for vagueness." *Colautti v. Franklin,* 439 U.S. 379, 390, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979) (citations and internal quotation marks omitted). The moving defendants argue that § 841(a)(1) cannot constitutionally be applied to them because they are lay people who, unlike physicians, pharmacists and other medical professionals, cannot be charged with knowledge of what constitutes the "usual course of professional practice."

The government argues that the moving defendants were put on notice by Drug Enforcement Administration ("DEA") Guidelines, published in 2001, stating the agency's position that prescribing controlled substances over the Internet without a physical examination "can subject the operators of the Internet site and any pharmacies or doctors who participate in the activity to criminal, civil or administrative sanctions." 66 Fed.Reg. 21181, 21183 (Apr. 27, 2001). As Justice Scalia has

observed, however, what the DEA believes the statute proscribes is immaterial: "The Justice Department, of course, has a very specific responsibility to determine for itself what [criminal statutes mean], in order to decide when to prosecute; but we have never thought that the interpretation of those charged with prosecuting criminal statutes is entitled to deference." *Crandon v. United States*, 494 U.S. 152, 177, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990) (Scalia, J., concurring in the judgment).

■ Although the Court rejects the notion that DEA's official interpretation is sufficient to give the moving defendants fair notice that their conduct might be prosecuted, it concludes that the phrase "usual scope of professional practice" is not unconstitutionally vague. The moving defendants argue that § 841(a)(1) does not give fair notice that operating a website might result in criminal liability. But "a statute or regulation is not required to specify every prohibited act." *Perez v. Hoblock*, 368 F.3d 166, 175 (2d Cir.2004). Similarly, "it is immaterial that there is no litigated fact pattern precisely in point." *United States v. Kinzler*, 55 F.3d 70, 74 (2d Cir.1995) (citations and internal quotation marks omitted). All that due process requires is that a statute "not lull the potential defendant into a false sense of security, giving him no reason even to suspect that his conduct might be within its scope." *United States v. Herrera*, 584 F.2d 1137, 1149 (2d Cir.1978).

By its terms, § 841(a)(1) creates a sweeping prohibition on distribution of controlled substances, subject to a relatively narrow exception for distribution within the usual scope of professional practice. That latter phrase has an objective meaning that prevents arbitrary prosecution and conviction: Neither the government nor the jury is free to impose its own subjective views about what is and is not appropriate; rather, the government is obliged to prove, and the jury constrained to determine, what the medical profession would generally do in the circumstances.

Moreover, a reasonable person reading § 841(a)(1) is on notice that distributing controlled substances is illegal unless it fits within the exception; it is not too great a burden to require that person to investigate the extent of the exception before plunging ahead. Put another way, it is disingenuous that the moving defendants seek to invoke the exception as legalizing their actions, but then claim that they do not know what the exception means.

### III

In sum, the conduct alleged in the Superseding Indictment falls within the embrace of the current federal drug laws. Those laws are not unconstitutionally vague.