# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1260

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Northern |
| | * | District of Iowa. |
| Marshall Neil Kanner, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: November 20, 2009
Filed:  April 26, 2010

_____

Before WOLLMAN, JOHN R. GIBSON, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Marshall Neil Kanner conditionally pled guilty to conspiracy to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D), 841(b)(1)(D)(2), 846, 856(a)(1), and 861(a)(1), and conspiracy to launder money from the drug conspiracy, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), 1956(h), and 1957.  The district court[1] sentenced Kanner to 32 months imprisonment to be followed by a 2-year term of supervised release.  The court also entered a

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

preliminary forfeiture order of $1,875,861.03.[2]  Kanner appeals the denial of his motion to dismiss the indictment as to the drug conspiracy charge, his money laundering conspiracy conviction, and the forfeiture judgment.  We affirm.

I.

We incorporate by reference the facts set forth in Kanner's codefendant's case, United States v. Orlando Birbragher, Case No. 08-4004, and also set forth the following, additional facts.  Kanner was one of the principal owners and operators of Pharmacom International Corporation ("Pharmacom"), a company that used the internet to distribute prescription drugs, including Schedule III and IV controlled substances, for which a valid prescription is required.[3]  On November 7, 2007, Kanner, Orlando Birbragher, and others were charged in a 31-count indictment.[4] Kanner was charged in Counts I and II.  Count I alleges a multiple-object drug conspiracy.  Count II charges a multiple-object conspiracy to launder money from the drug conspiracy alleged in Count I.

---

[2]In its Amended Preliminary Order of Forfeiture, the district court determined that $3,768,009.43 represented the amount of money involved in the drug and money laundering conspiracies but reduced the forfeiture amount to $1,575,964.45 as a result of the civil forfeitures of Kanner's personal property in the form of specified bank accounts and the interest accrued on such accounts.  The forfeiture amount is not fixed in that "[t]he United States will seek to amend [the] Preliminary Order of Forfeiture to credit [Kanner] for the interest accrued on those accounts."  United States v. Kanner, No. CR 07-1023, slip op. at 4 n.1 (N.D. Iowa July 1, 2009).

[3]The Controlled Substances Act (CSA), 21 U.S.C. §§ 801-971, defines certain drugs as "controlled substances" and lists them within one of five established schedules, depending on potential for abuse and accepted medical use.  Id. § 802(6).

[4]A superceding indictment was filed on August 6, 2008; however, it did not materially alter the substantive charges against Kanner.

-2-

Following the district court's denial of Kanner's motion to dismiss the indictment, Kanner entered a conditional guilty plea to the first two objects of the Count I drug conspiracy[5] and the third object of the Count II money laundering conspiracy.[6] The district court sentenced Kanner to 32 months imprisonment followed by a 2-year term of supervised release. The court also entered a preliminary forfeiture order in the net amount of $1,875,861.03. See infra note 2. Kanner appeals.

---

[5]The first two objects of the Count I drug conspiracy are:

1)    To dispense and cause to be dispensed Schedule III controlled substances outside of the usual course of professional practice and without legitimate medical purpose, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(D); and

2)    To dispense and cause to be dispensed Schedule IV controlled substances outside of the usual course of professional practice and without legitimate medical purpose, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(D)(2)[.]

(Indictment ¶ 11.)

[6]The third object of the Count II money laundering conspiracy is:

3)    To knowingly engage and attempt to engage in one or more monetary transaction(s) of a value greater than $10,000 derived from specified unlawful activity, that is, the illegal dispensing of Schedule III and IV controlled substances (a violation of Title 21, United States Code, Section 841(a)(1)), in violation of Title 18, United States Code, Section 1957.

(Id. ¶ 22.)

## II.

Kanner appeals the district court's denial of his motion to dismiss Count I on two grounds. First, he asserts that Count I fails to state an offense in violation of the Controlled Substances Act (CSA), 21 U.S.C. §§ 801-971. Second, he argues that Count I is unconstitutionally vague in violation of his due process rights under the Fifth Amendment. Kanner also argues that Count II and the forfeiture judgment must be reversed because both are incorrectly premised on Count I being unlawful activity. We address each of Kanner's arguments in turn.

## A.

Kanner first contends that the district court erred in denying his motion to dismiss as to Count I because it fails to allege a violation of the CSA under Gonzales v. Oregon, 546 U.S. 243 (2006). We review Kanner's motion to dismiss the indictment de novo. United States v. Williams, 577 F.3d 878, 882 (8th Cir. 2009).

In United States v. Moore, 423 U.S. 122 (1975), the Supreme Court discussed the scope of CSA violations and held "that registered physicians can be prosecuted under [21 U.S.C.] § 841 when their activities fall outside the usual course of professional practice." Id. at 124; see 21 C.F.R. § 1306.04(a) (requiring that every prescription for a controlled substance "be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice"). Kanner argues that the Supreme Court adopted a new standard for CSA violations in Gonzales such that the CSA only criminalizes "illicit drug dealing and trafficking as conventionally understood," 546 U.S. at 270, a standard that he asserts the allegations in Count I do not satisfy.

At issue in Gonzales was the validity of a 2001 Interpretative Rule "prohibit[ing] doctors from prescribing regulated drugs for use in physician-assisted suicide, notwithstanding [the Oregon Death With Dignity Act (ODWDA)] permitting

the procedure." Id. at 248-49. The Supreme Court held that "the CSA's prescription requirement does not authorize the Attorney General to bar dispensing controlled substances for assisted suicide in the face of a state medical regime permitting such conduct." Id. at 274-75. In so holding, the Court observed, "The statute and our case law amply support the conclusion that Congress regulates medical practice insofar as it bars doctors from using their prescription-writing powers as a means to engage in illicit drug dealing and trafficking as conventionally understood." Id. at 269-70. Kanner seizes on the phrase "illicit drug dealing and trafficking as conventionally understood," id. at 270, and argues that Gonzales adopted this as the new standard for violations of the CSA. Kanner argues that this standard was not met because "Pharmacom's approach does not remotely resemble 'illicit drug dealing and trafficking as conventionally understood'" in that:

> Pharmacom customers were required to fill out medical questionnaires that were reviewed by physicians contractually obligated to maintain any necessary licenses and to exercise their professional judgment in deciding whether to prescribe the medication. The specific prescriptions identified in the Indictment generally involved a month's supply of medication. Prescriptions were filled by pharmacies registered with the Attorney General. Detailed records were kept of these transactions.

(Appellant Br. 10.)

The Tenth Circuit considered a similar argument in United States v. Lovern, 590 F.3d 1095 (10th Cir. 2009). There, Jerry Lovern, the principal pharmacist at Red Mesa Pharmacy ("Red Mesa"), challenged his convictions on one count of conspiracy to distribute controlled substances, in violation of § 841(a)(1), and three counts of distribution of controlled substances, in violation of § 841(a)(1) and 18 U.S.C. § 2. Id. at 1097, 1099. Red Mesa "secur[ed] customers exclusively through websites run by two companies, SafeTrust Processing [("SafeTrust")] and IntegraRx . . . ." Id. at 1098.

> Through these web-based businesses, customers across the nation received prescription drugs simply by filling out an online questionnaire. Physicians in the United States and Puerto Rico contracted with SafeTrust and IntegraRx to log into their websites, review customer questionnaires, and either approve or disapprove the customers' requested prescriptions. Physicians did not examine their putative patients; they did not verify any of the personal information provided in the questionnaires; in fact, they did not have any dealings at all with the subjects of their prescriptions. Yet, the doctors approved the vast majority of the requested prescriptions. SafeTrust and IntegraRx took these approved prescriptions and placed them online for access by participating pharmacies, including Red Mesa, to fill and ship.

Id. There was no dispute that Lovern filled the "prescriptions" for controlled substances. Id.

On appeal, Lovern asserted that his convictions should be reversed because "[t]here was no evidence [at trial] and . . . no law that a prescription received via the [I]nternet is illegal." Id. at 1100 (alterations in original) (quotation omitted). The Tenth Circuit observed:

> [T]his is a red herring: the government has disclaimed any interest in trying to prove that using the Internet to transmit a lawful prescription is unlawful under the CSA. Rather, to show that Mr. Lovern violated the CSA, the government has argued before us that the issuance of a prescription based solely on an online questionnaire, without anything more-without any existing doctor-patient relationship, without a physical exam, without any confirmation of the questionnaire's contents, without any further contact of any sort-falls outside the usual course of contemporary medical practice. And, the government contends, Mr. Lovern knew this is exactly how IntegraRx and SafeTrust physicians operated, yet he still filled their prescriptions for controlled substances. It is this theory of CSA liability that the government has pursued against Mr. Lovern, and that Mr. Lovern must address to avoid his conviction.

Id.

-6-

The court then addressed <u>Gonzales</u>, stating:

> <u>Gonzales</u> does not apply to our case. Unlike <u>Gonzales</u>, we have before us no interpretive rule seeking to define a practice as lacking any legitimate medical purpose, let alone a rule that conflicts with a state's assessment of the legitimacy of that practice. Instead, in this case the government sought to establish that the conduct of the SafeTrust and IntegraRx physicians was inconsistent with the usual course of professional practice the old-fashioned way: through witnesses and documentary proof at trial focused on the contemporary norms of the medical profession. . . . In this case, then, "[t]he government [made] no attempt, as in <u>Gonzales,</u> to unilaterally define which practices fall outside th[e] scope [of professional practice]; rather, it intend[ed] to leave that question where it has been for over 30 years-with the jury."

<u>Id.</u> (quoting <u>United States v. Quinones</u>, 536 F. Supp. 2d 267, 271 (E.D.N.Y. 2008)).

Several federal district courts have also rejected arguments that <u>Gonzales</u> signaled a major shift in what constitutes a violation of the CSA. <u>See United States v. Prejean</u>, 429 F. Supp. 2d 782, 801-03 (E.D. La. 2006) ("At the outset, it should be noted that the Supreme Court cites <u>Moore</u> with approval in <u>Gonzales</u>. The Supreme Court does not display the intention to upset its holding in <u>Moore</u> or to question the case law in the lower courts that followed from <u>Moore</u>. . . . The Court finds that <u>Gonzales v. Oregon</u> does not disturb the prior body of case law that allows violations of state regulations of medical practice as relevant evidence of guilt under 21 U.S.C. § 841." (citation omitted)); <u>United States v. Hindman</u>, Nos. CR-07-096-RHW-1, RHW-2, 2008 WL 2945482, at *5 (E.D. Wash. July 25, 2008) (unpublished) ("Notably, the Supreme Court in <u>Gonzales</u> discusses its holding in <u>Moore</u> and does not disturb its conclusion that § 841 legitimately 'bars doctors from peddling to patients who crave the drugs for . . . prohibited uses.'" (quoting <u>Gonzales</u>, 546 U.S. at 274)); <u>United States v. Hernandez</u>, No. 07-60027-CR, 2007 WL 2915854, at *11 (S.D. Fla. Oct. 4, 2007) (unpublished) ("Simply put, the <u>Gonzales</u> opinion did nothing to disturb the holding in <u>Moore</u> . . . which was based solely on the statutory provisions

of the CSA, without reference to any regulation issued pursuant to the Act or to any Interpretive Rule.").

In sum, Gonzales has no application here. Furthermore, Gonzales did not supplant the standard for violations of the CSA. Rather, post-Gonzales, "knowingly distributing prescriptions outside the course of professional practice is a sufficient condition to convict a defendant under the criminal statutes relating to controlled substances." United States v. Armstrong, 550 F.3d 382, 397 (5th Cir. 2008), cert. denied, 130 S. Ct. 54 (2009). Here, the indictment charges that physicians and pharmacists contracted by Pharmacom, owned and operated by Kanner, acted in a manner inconsistent with the usual course of professional practice in violation of the rule established in Moore and unaffected by Gonzales. Therefore, Count I does state a violation of the CSA.

B.

Kanner raises the same challenge to Count I as his codefendant in United States v. Orlando Birbragher, Case No. 08-4004, arguing that Count I must be dismissed because the CSA is unconstitutionally vague as applied to Kanner, in violation of his Fifth Amendment right to due process of law. For the reasons stated in our opinion in No. 08-4004, we reject this challenge. Accordingly, we hold that the CSA, as applied to Kanner, is not unconstitutionally vague.[7] Therefore, the district court properly denied Kanner's motion to dismiss Count I.

---

[7]Kanner raises one new argument in the context of his vagueness challenge, asserting that, under the rule of lenity, Count I must be dismissed. However, we have previously held that "the CSA's . . . structure and language resolve any ambiguities contained within [the statute such that] . . . the rule of lenity is not implicated here." United States v. Smith, 573 F.3d 639, 653 (8th Cir. 2009) (quotation omitted).

## C.

Finally, Kanner asserts that his Count II conviction for conspiracy to launder money and the forfeiture judgment must be reversed. However, his argument for reversal rests solely on the ground that the illegal activity that Count II is premised on, the Count I drug conspiracy, should be dismissed because Count I: (1) fails to state a violation of the CSA and (2) is unconstitutionally vague. As we have already rejected both of these contentions for the reasons stated herein and in No. 08-4004, Kanner has failed to offer any basis for reversal. Therefore, we affirm his money laundering conviction and the forfeiture judgment.

## III.

For the reasons stated above and in No. 08-4004, we affirm the district court's denial of Kanner's motion to dismiss the indictment and affirm his money laundering conviction and the forfeiture judgment.

_____